[Civ. No. 17114. First Dist., Div. Two. Nov. 21, 1956.]

LILLIAN R. DANDINI, Respondent, v. A. O. DANDINI et al., Appellants.

Leo R. Friedman for Appellants.

Johnson, Harmon & Henderson for Respondent.

DRAPER, J. pro tem.*—This is an action by plaintiff wife for 253 shares of the stock of Remillard-Dandini Company alleged to be community property fraudulently concealed at the time the property rights of wife and husband were determined in an earlier separate maintenance action. After non-jury trial, plaintiff had judgment determining that the stock is community property of plaintiff and defendant husband, that it is held by the defendants Sesenna (father, mother and two children) as constructive trustees, and awarding all the stock to plaintiff. Money judgment was also ordered against all the individual defendants. Defendants appeal.

The principal defense is based upon the doctrine of res judicata. It therefore becomes necessary to review some of the many actions which go to make up a saga of litigation already rivalling the fictional case of Jarndyce and Jarndyce.

The Dandinis were married in 1932 and separated in 1938. In 1942 plaintiff commenced an action for separate maintenance. She alleged that the same shares of stock here in issue were community property of her husband and herself, but had been fraudulently transferred to defendants Sesenna, who were joined as defendants in that separate maintenance action. In one cause of action she asserted that husband had become indebted to the Sesennas, and that the transfer of the stock to them was merely as security but that he and the Sesennas had conspired to make the transfer appear absolute. In a second count, she asserted that the transfer was wholly without consideration, was made in the course of a conspiracy to conceal this community property from her, and that the

*Assigned by Chairman of Judicial Council.

Sesennas in fact held the stock solely for the defendant husband. At the trial, there was testimony that Dandini had borrowed money from defendants Sesenna to finance the display of a "hydrosphere" at the San Francisco World Fair in 1939. He gave promissory notes and assigned a half interest in the device to be displayed. The Sesennas filed suit upon the defaulted notes, and their claims were settled by Dandini's transfer to them of the disputed shares of Remillard-Dandini Company.

Plaintiff wife had decree for separate maintenance, but the court found that the transfer of the stock was not fraudulent and was made upon consideration. The prayer to set aside that transfer was therefore denied. She appealed from the latter portion of the judgment, but it was affirmed. (*Dandini* v. *Dandini*, 82 Cal.App.2d 263 [186 P.2d 41].) In that opinion the evidence in the separate maintenance action is fully reviewed. The wholly adversary and contradictory nature of the action and the evidence is pointed up by the statement (p. 269) "We cannot say that we would not have arrived at a different conclusion had we sat in judgment in the trial court." But the evidence was held not, as a matter of law, insufficient to sustain the judgment. The trial court had before it the fact that a judgment based upon misappropriation of funds of the corporation had been entered against defendant Dandini in the Superior Court of Alameda County (see 82 Cal.App. 2d 263 at 265; *Remillard Brick Co.* v. *Dandini*, 98 Cal.App. 2d 617 [220 P.2d 927]), and the decision on appeal noted the fact that defendant Dandini and defendant Julianna Sesenna, after judgment in the separate maintenance action, were married. This marriage was in violation of a restraining order (*Dandini* v. *Dandini*, 86 Cal.App.2d 478 [195 P.2d 871]).

In 1949, the wife filed an action alleging that her husband had, at the time of the separate maintenance decree, owned several parcels of real property acquired with community funds. He had purchased them in the name of The Montreal Corporation, an instrumentality used by him and the Sesennas (who were defendants in that action also) to effect a fraudulent concealment from his wife of his title to these items of community property. In the separate maintenance action, defendants had testified that the only business dealings had among them were those relating to the hydrosphere. The trial court found in favor of plaintiff, determined the property to be community in character, and awarded it to plaintiff. This judgment was affirmed on appeal. (*Dandini* v. *Dandini*, 120

Cal.App.2d 211 [260 P.2d 1033].) It was there determined that the fraud so perpetrated upon plaintiff in the separate maintenance action was extrinsic, and thus warranted the intervention of equitable jurisdiction. This court said of defendants' fraud: "Had it been limited to false or perjured testimony in the separate maintenance action another question would be presented, but here the conduct of the parties went beyond the giving of false or perjured testimony in the action itself. Under the findings of the court they engaged in an elaborate and active conspiracy to conceal the facts from the plaintiff so that she was thereby prevented from litigating the question of her rights in this [real] property in the separate maintenance action."

The trial court there had found that the defendants in the separate maintenance action had falsely and fraudulently testified that "they had never had any other business transactions . . . except a business transaction involving investment by them in a certain hydrosphere invention . . . which transaction had nothing whatsoever to do and was in no way related to the conspiracy here involved . . ."

That "Montreal action" had been tried January 31 and February 9, 1951. Judgment was entered May 4, 1951. The present action was filed September 16, 1952.

In this action, respondent wife alleges almost exactly the same matters included in the complaint in the Montreal action, and avers that such "fraudulent conspiracy, acts, representations and conduct" of appellants were designed to and did induce and cause the findings and judgment against respondent in the separate maintenance action. Appellants' answer set up the judgment in the separate maintenance action as res judicata. The evidence at the trial consisted principally of the transcript of testimony taken in the separate maintenance action, the court file in that action, and the findings, conclusions and judgment in the Montreal action. Upon this evidence, the trial court found that the stock was community property of respondent and appellant husband, having been fraudulently conveyed by him to appellants Sesenna, and awarded it to respondent.

It is apparent, as is conceded by respondent's brief, that "this same cause of action had been tried before and judgment rendered adversely to plaintiff in . . . the separate maintenance action." The question here is whether that prior judgment bars this action.

". . . [W]hen equitable relief from a final judgment is

sought, it makes an important difference whether the fraud or mistake is intrinsic or extrinsic to the issues involved in the case in which the judgment was entered." (*Jorgensen* v. *Jorgensen,* 32 Cal.2d 13, 18 [193 P.2d 728], and see the full opinion in that case for a thorough discussion of the doctrine of res judicata.)

Even though a judgment is based upon false allegations supported by perjured testimony such fraud is intrinsic, and the judgment, when final, will bar relitigation of the same issue if the losing party has not been precluded by fraud from participating in the proceeding or fully presenting his case. (*Gale* v. *Witt,* 31 Cal.2d 362 [188 P.2d 755] ; *Adams* v. *Martin,* 3 Cal.2d 246 [44 P.2d 572] ; *Hamilton* v. *Carpenter,* 15 Cal.2d 130 [98 P.2d 1027].) Even though a party does not appear in such a proceeding, if he has been given proper notice and has not been prevented from full participation, he "has had an opportunity to present his case to the court and to protect himself from any fraud attempted by his adversary. . . . Having had an opportunity to protect his interest, he cannot attack the judgment once the time has elapsed for appeal or other direct attack." (*Westphal* v. *Westphal,* 20 Cal.2d 393, 397 [126 P.2d 105].)

It is apparent that the judgment in the separate maintenance action bars recovery here. In that action, plaintiff alleged fraudulent conveyance of the stock by her husband to the Sesennas, and a conspiracy of the husband and the Sesennas to conceal the husband's ownership from her. This issue was fully litigated, and was decided in defendants' favor. The only additional evidence now adduced is the finding in the Montreal case that appellants here did, contrary to their testimony in the separate maintenance action, have business dealings other than those concerning the hydrosphere-corporate stock transaction. But these dealings were wholly collateral to the issue concerning the hydrosphere and the stock. Unquestionably, the transactions revealed by the Montreal action, if known at the time of the separate maintenance trial, would have had a tendency to impeach the testimony of defendants as to the hydrosphere-stock transaction. But mere impeaching testimony, even when discovered shortly after trial and made the basis of a motion for new trial, is not sufficient to require granting of new trial. (*Waer* v. *Waer,* 189 Cal. 178 [207 P. 891] ; *Peterson* v. *Peterson,* 121 Cal.App. 2d 1 [262 P.2d 613] ; *Wilson* v. *Kopp,* 114 Cal.App.2d 198 [250 P.2d 166] ; *Anderson* v. *Freis,* 61 Cal.App.2d 159 [142

P.2d 330].)  As already pointed out, the court in the separate maintenance action had before it other evidence impeaching defendants' credibility.

Certainly, the additional impeaching evidence falls far short of establishing fraud which is extrinsic and therefore the basis for equitable intervention against the prior judgment.  There is nothing in this testimony to indicate that respondent was prevented, in the separate maintenance trial, from fully presenting her claim that the stock transfer to the Sesennas was fraudulent and without consideration.  At the most, it shows she was prevented from refuting some testimony as to matters other than the stock transfer, and from showing another fraud of appellants, wholly unconnected with the stock transaction.  Even now, after trial of all three actions (separate maintenance, Montreal, and the case at bar), there is no evidence that the stock here sought was ever held by the Montreal Corporation, or that the conspiracy as to that corporation had any direct connection of any sort with the hydrosphere-stock transaction.  In fact, the court found, in the Montreal case, that the hydrosphere-stock transaction ''had nothing whatsoever to do with and was in no way related to the conspiracy here involved.''  Thus if all the evidence in the Montreal action had been before the court in the separate maintenance trial, it would, at most, have had the effect of attacking the integrity of the witnesses who testified that the stock transfer was bona fide.

A wholly different situation was presented in the Montreal case.  As to the issue of the Montreal stock and properties, there was extrinsic fraud which permitted the later attack on the judgment.  But the issue involving the Remillard-Dandini stock was the principal issue litigated in the separate maintenance action.  The evidence in the present case does not even show falsity or perjury in the testimony directly upon that issue at the separate maintenance trial.  It is obvious that the mere impeaching evidence here shown does not, as to the issue regarding the Remillard-Dandini stock, constitute extrinsic fraud such as to warrant equitable relief from the decree in the separate maintenance action insofar as it disposes of the stock here in issue.

Mere afterthought, the fancied value of a changed approach, or fortuitous subsequent discrediting of the integrity of an opposing party or witness, is not enough to warrant exception to the rule of finality.  Nothing more is here presented.  However dissatisfied she may be with the decision in the

separate maintenance action, respondent must recognize its finality upon the issue of stock ownership.

The judgment is reversed, with directions to the trial court to enter judgment for the defendants.

Dooling, Acting P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied December 21, 1956, and respondent's petition for a hearing by the Supreme Court was denied January 16, 1957.