[Civ. No. 5353.   Fourth Dist.   Mar. 1, 1957.]

EVELYN F. CHAMBERS et al., Appellants, v. THE SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

Mack, Bianco, King & Eyherabide, Louis C. Spiess, Jr., and Robert E. King for Appellants.

Borton, Petrini, Conron & Brown for Respondents.

MUSSELL, J.—On September 22, 1954, at about 2 p. m., Donald Thomas Chambers, while driving a Chevrolet automobile in a southerly direction at what is known as the Giumarra Winery Crossing, about 7 miles east of Bakersfield, collided with a westbound Southern Pacific diesel unit and received fatal injuries. This action for damages was instituted by the widow Evelyn F. Chambers, for herself and on behalf of their three minor children. A jury returned a verdict in favor of the defendants and against the plaintiffs, and plaintiffs appeal from the judgment entered in accordance with the verdict.

A reversal of the judgment is sought on the grounds that (1) the trial court erroneously refused to instruct the jury on the doctrine of last clear chance; (2) The trial court erred in communicating secretly by messages with the jury while the latter had the case under consideration and deliberation and without the presence of counsel; and (3) The court erred in repetitiously instructing the jury and in refusing to give certain instructions offered by the plaintiffs.

The decedent, approaching the crossing involved from the north on a 19-foot wide private road, stopped his car at a railroad crossing sign, a boulevard stop sign, and a sign reading "Private property. Permission to pass over revocable at any time." These signs were on the west side of the road and at spur tracks which ran parallel with the main railroad tracks, where the accident occurred. The two spur tracks were approximately 14 feet wide and the area or dividing strip between the spur tracks and the westbound main line, where the accident occurred, is about 52 feet. Both sides of the grade crossing are posted with a standard crossarm sign, a boulevard stop sign and a private property sign. After stopping at the spur tracks, decedent proceeded slowly across this dividing strip to a point 6 to 8 feet north of the westbound main tracks and there stopped his car. At that time one of two trucks, traveling in a northerly direction over the crossing, stalled on the rails of the eastbound main track which, at that point, runs parallel with and adjacent to the westbound main track. The trucks were in the center of the roadway, apparently blocking decedent's southbound progress over the

crossing. The decedent remained in this stopped position while the driver of the truck attempted to start it, without success, got out of it, and, with the other truck driver's help, pushed it back off the tracks. The decedent then started across the westbound main track and the left front part of his automobile collided with the right front corner of defendants' diesel engine. The view of this crossing is unobstructed easterly and westerly therefrom for at least two miles and on the day of the accident the visibility was good.

The engineer testified that he was operating three diesel electric units, coupled together; that he was traveling about 50 miles per hour as he approached the crossing and that he and the fireman were the only persons on the train; that he first saw the decedent's car as it was crossing the spur tracks and that it proceeded slowly south and stopped clear of the westbound main track; that it remained stopped at this point for about a minute; that he blew the whistle at the crossings 1,632 feet east of the point of impact and also at the crossing 3,042 feet east thereof; that he also blew the whistle several times just before the impact. Clarence F. Oeff, the fireman, testified that he was sitting on the left side of the engine cab and his vision was cut off for 50 or 75 feet by the front of the engine; that the engineer started blowing a series of short crossing whistles in the neighborhood of the Bryan Smith shed (approximately 850 feet east of the crossing involved) and at that time he (Oeff) saw the decedent's car traveling over the spur track toward the main line; that the car appeared to stop about 6 or 8 feet from the main line, when it went out of vision; that the engineer had also started a crossing whistle when the train passed over the crossing 1,632 feet east of the point of collision.

Eddie Ortiz, the driver of the truck which stalled at the crossing, testified that when his truck stalled he got out and pulled up the hood to see what was wrong and he and his helpers then pushed the truck back off the track; that he then noticed the train coming and, at the time, the decedent's car was stopped, waiting for them to "do something or get out of the way, or something"; that he heard no whistle or bell sounding. Rudy Ortiz, driver of the second truck, testified that he stopped the truck to the east of the one driven by his brother, Eddie; that he first saw the decedent's car at the stop sign; that he was helping push the truck back when he first saw the train; that he heard the train whistle at about the same time as the crash; and that the decedent's car was

then moving slowly forward; that he saw the decedent grip the wheel of his car and make a motion as if he was reaching for the gear shift.

A section foreman, who was working on the tracks west of the crossing, testified that he saw the train when it reached the second crossing east of the one here involved; that he heard the whistle as the train passed the first crossing to the east and then heard a short whistle and saw the dust. Two men who were unloading boxcars for the A. F. C. Fertilizer Company, and were about 300 feet east of the Giumarra crossing, heard the train whistle a few seconds before the crash. A labor foreman working in a building approximately 300 feet east of the Giumarra crossing testified that he saw the locomotive approaching the crossing 1,632 feet east of the Giumarra road and heard no whistle, bell or horn then nor until he heard the screeching of brakes and the crash. A carpenter, working in the same building, testified that he saw the engine at the crossing 1,632 feet east and that no whistle or bell was sounded up to the time he heard the squeal of brakes and the crash. An employee of the Giumarra Bros., who was standing on a loading dock 168 feet west of the crossing, testified that he heard the crash and no train whistle sounded until after the noise of the accident. Another employee of the same company testified that he was standing on this dock and heard no whistle or horn until after the crash.

The first question to be determined is whether the trial court erred in refusing to instruct the jury on the doctrine of last clear chance. The formula prescribing the conditions for the application of this doctrine is stated in *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729, 739-741 [306 P.2d 432], as follows:

" '(1) That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; (2) that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation; and (3) has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure.'

(*Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477, 483 [283 P.2d 1]; *Daniels* v. *City & County of San Francisco, supra,* 40 Cal.2d 614, 619 [255 P.2d 785].)"

It is also stated therein:

"In analyzing the required conditions for the application of the doctrine as set forth in said decisions, it should be noted that the time element is the all important factor. In other words, if the doctrine is to be applied and a recovery is to be permitted despite the contributory negligence of the injured party, there must be substantial evidence to show that the defendant had a last clear chance to avoid the accident by the use of ordinary care following the time that the injured party had lost any similar opportunity to avoid the accident by the use of such care."

In the instant case the uncontradicted testimony is that the decedent, after stopping at the spur track, proceeded slowly southward until he reached a point approximately 6 to 8 feet from the first track of the westbound main line and there stopped. He was then in no position of danger. When he then proceeded to drive onto the tracks, a distance of approximately 8 feet, the engineer, who had a right to assume that he would remain stopped until the train passed, had no time to avoid the accident. Under the circumstances shown, the doctrine of last clear chance was inapplicable and it was not prejudicial error to refuse an instruction on that doctrine.

It appears from the affidavit of the trial judge herein that while the jury was deliberating and before it returned a verdict, it sent a written note to the judge asking which form of verdict it should use where the preponderance of evidence showed that plaintiff (sic) was guilty of the greater negligence. The court then verbally instructed the bailiff to inform the jury as follows: "The answer to your question is to use the form favoring the Southern Pacific and its employees." These proceedings took place in the absence of counsel for the respective parties and without calling the court into session. Appellants claim that this constituted prejudicial error and was contrary to the law as set forth in sections 613 and 614 of the Code of Civil Procedure. However, no prejudice affirmatively appears and it is evident that the jury had agreed upon a verdict and were only seeking advice as to what form should be used. In *Santina* v. *General Petroleum Corp.,* 41 Cal.App.2d 74, 77 [106 P.2d 60], the court said:

"It is true that a departure from the code provisions

specifying the method of communication between the court and the jury is an 'improper irregularity' and goes 'to the substance of the right of trial by jury' (*Nelson* v. *Southern Pac. Co.*, 8 Cal.2d 648, 655 [67 P.2d 682]), but it does not follow from this that any and every departure from that method has a 'probable substantial relation to the disposition of the cause.' These are the 'exceptional circumstances' referred to in the Nelson case, and it is but another way of saying that the error must be substantial and real, not merely fancied or technical. Where any error is relied on for a reversal it is not sufficient for appellant to point to the error and rest there. Since the appellate court must affirmatively find prejudice such finding must be based either upon the facts found in the record or upon the reasonable inferences to be drawn therefrom. In the face of the constitutional limitation there is no room for the presumption that prejudice results from the fact of error alone. The fact of prejudice is just as essential as the fact of error.''

■ Appellants contend that the statement to the jury in answer to their inquiry was prejudicial because it excluded the issue of proximate cause. This contention is likewise without merit. The jury did not inquire about proximate cause and had apparently decided that issue, upon which they had been fully and fairly instructed by the court.

■ Finally, it is argued that the court erred in repetitiously instructing the jury on the duties and standards of care of the deceased motorist and in refusing to give reciprocal instructions on the duties and standards of care of the engineer. An inspection of the instructions given and refused on this subject disclose no prejudicial error and it is not shown that the instructions given were incorrect statements of the law applicable; nor does it appear that the trial court indicated his opinion either for or against the appellants. The mere repetition of instructions upon the same subject under the circumstances did not constitute reversible error. (*Faeh* v. *Union Oil Co.*, 107 Cal.App.2d 163, 165 [236 P.2d 667].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 25, 1957. Carter, J., was of the opinion that the petition should be granted. Schauer, J., did not participate therein.