[Civ. No. 9586.   Third Dist.   Sept. 10, 1959.]

JAMES D. CHARLES et al., Plaintiffs; RAMONA CHARLES et al., Respondents, v. JESSE L. RICE et al., Defendants; RICE BROTHERS (a Corporation), Appellant.

600

Mento, Buchler & Littlefield for Appellant.

Ira M. Shadwell and Daniel S. Carlton for Respondents.

VAN DYKE, P. J.—This is an appeal from an order granting a new trial after a jury returned a verdict in favor of defendant Rice Brothers. The new trial was granted on the grounds of newly discovered evidence and error at law in the giving of an instruction on unavoidable accident.

Appellant is a corporation engaged in road building. At the time of the accident which gave rise to this action, it was doing road construction work on United States Highway 299, under a contract with the State of California. That highway runs generally east and west and intersects with

United States Highway 99 about 1½ miles north of Redding. The accident occurred at a point close to that intersection. Respondents were guests riding in a car being driven by Dr. James D. Charles along Enterprise Road, a county highway, which dead ends into Highway 299 from the south. Dr. Charles turned left to go into Redding, and shortly after making the turn his car went off the right side of the road at a point where there is a steep slope down the side of a 60-foot fill. The theory of respondents' case was that appellant corporation had violated its duty to keep the road safe for public use during the performance of its contract. There is no claim that appellant did not owe this duty under the form of contract between itself and the state. As to the nature and extent of appellant's duty thereunder, see *Breslin* v. *Fredrickson*, 152 Cal.App.2d 780 [313 P.2d 597], wherein the subject is discussed.

We think it unnecessary to state the evidence in detail. It is sufficient to say that on the issue of appellant's negligence the evidence is sharply in conflict. There is conflict also with respect to appellant's position that the negligence of Dr. Charles was the sole proximate cause of the accident. Speaking generally, the charge of negligence made against appellant was that during construction it did not perform its duty of care to the traveling public because it failed to maintain sufficient warning devices to warn the public of the sharp declivity along the right-hand edge of the westbound travel lane and in maintaining for its own purposes, close to the edge of the travel lane, a strip of soft material banked up, which if encroached upon by the tires of a traveling car would have a strong tendency to pull the car over the edge. It was charged against Dr. Charles that he did not stop at the stop sign before entering Highway 299 and that he came in at such speed that when he made his left turn he lost control of his car, which then plunged down the steep side of the fill. These contentions were thoroughly explored at the trial through evidence presented by both sides.

The trial court gave an unavoidable accident instruction in the following language:

"In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence. Even if such an accident

could have been avoided by the exercise of exceptional foresight, skill or caution, still, no one may be held liable for injuries resulting from it''

Such an instruction was condemned in *Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652 [320 P.2d 500]. The Supreme Court held that since the ordinary instructions on negligence and proximate cause sufficiently show that plaintiff must sustain his burden of proof on these items in order to recover, an instruction on unavoidable accident serves no useful purpose and that such an instruction is confusing because when jurors are told that ''in law we recognize what is termed an unavoidable or inevitable accident'' they may get the impression that unavoidability is an issue to be decided and that, if proved, it constitutes a separate ground of defendant's nonliability.

This record presents a situation where, while there was impressive evidence that appellant had failed to maintain adequate safeguards in view of the condition of the road at the point where the accident happened, the evidence supporting appellant's contention that the negligence of Dr. Charles was the sole cause of the accident was much weaker. Perhaps at this point it would be well to state more fully the evidence as to the driving conduct of Dr. Charles. He was driving his car northerly on Enterprise Road, which intersects, but does not cross, Highway 299. The two roads intersect at such an angle that one intending to drive into Redding must make a sharp left turn down the westbound lane after crossing the center line. There was a short reflectorized barrier on Highway 299 opposite the point where that road was entered from Enterprise Road. But aside from this short barrier there was nothing to mark the edge of the road along the fill. It was at a point along this unprotected edge of the dirt embankment that the Charles car overturned. The evidence was conflicting as to whether Dr. Charles stopped before entering Highway 299. The occupants of his car all testified that he did, but directly opposed was an extrajudicial statement made by him in this manner: An investigating officer asked him if he stopped at the stop sign and he replied, ''What stop sign.'' There was also opinion evidence of a patrol officer based on experiments made after the accident and on marks he saw on the road surface which he attributed to the Charles car that Dr. Charles had not stopped but had come into the intersection at such speed as to make it probable he lost con-

trol of his car. The weather had been stormy. The night was very dark, and there was no moon. The approach to Highway 299 from Enterprise Road was upgrade and the lights of a car tended to shine out into space and over the barrier. Furthermore, there was evidence that after a car turned at that point, under those conditions, its lights would be too high to show either the edge of the road or the soft embankment close to the edge. Dr. Charles testified that after making his stop he made a fairly wide turn in order to get over the white line down the middle of Highway 299 and as he turned he suddenly had a peculiar feeling as if he were in loose gravel. He said he tried to pull his vehicle to the left, but it would not respond and started to slip over to its right side. It left the roadway about 30 to 50 feet from the point where he started his turn. Dr. Charles further said that the disparity of the widths of the lanes on the highway, that is, the difference in width between the 34-foot approach to the center line of Highway 299 from Enterprise Road and the 12-foot westbound lane, created a confusing condition and a tendency to drive close to the north side before realizing the danger of going over. He said when he felt his wheels pulling as though in loose gravel he was unable to pull his car back. The embankment or berm placed near the edge by appellant, as a safeguard against erosion, was of soft material and there was opinion testimony that if a car wheel got into it there would be a distinct tendency for the car to be pulled to the right and over the edge of the declivity.

It is of course well settled that, on review of an order granting a new trial, a reversal must be based upon a finding that the trial court's broad discretion has been abused. Certainly, as has often been said, the trial judge is in a position much more advantageous than that of a reviewing court to determine when a new trial ought to be granted.

Since the decision in the Butigan case it has often been held to be error to give the unavoidable accident instruction where the evidence on negligence is conflicting. Appellant does not dispute this, but argues that the error was nonprejudicial. Here again we have the benefit of the trial court's examination of that question and the trial court's determination that the error was prejudicial. We think we ought to accept that decision as one within the proper exercise of discretion. Here again the situation is one where the color and content of a trial as seen and considered by the trial court

on motion for new trial cannot be fully presented to a reviewing court by a written record.

The order of the trial court granting a new trial included the ground of newly discovered evidence. It appears that the trial court did not attach great weight to that ground, although feeling that it was a make-weight in favor of the motion.

In support of its contention that it had not been guilty of negligence, appellant presented five principal witnesses, all of whom were employed by the Department of Public Works. One of them, and probably the most important defense witness, was the resident engineer in charge for the state. They all testified as experts to the effect that the road under construction, as it was being maintained at the time of the accident, was safe for public use.

At the trial respondents contended that appellant, in the exercise of due care toward the traveling public, should have maintained along the edge of the road next to the fill either temporary reflectorized posts, or a permanent substantial barrier, or a temporary barrier. The contract did not specifically require these safeguards but generally required the contractor to take all safety precautions reasonably required for public protection. In view of the expert testimony that neither posts nor a barrier were so required, respondents' counsel sought on cross-examination of these witnesses, and particularly of the resident engineer, to show that after the accident a change order had been made in appellant's contract requiring a permanent barrier, and that a temporary barrier had been erected. Counsel desired to use the fact that a change order had been made, and that a temporary barrier had been erected, by way of impeachment of the appellant's witnesses who, as experts, had testified that the roadway under reconstruction by appellant had been kept in a safe condition. (See *Hatfield* v. *Levy Brothers*, 18 Cal.2d 798 [117 P.2d 481], on the admissibility of such evidence for impeachment purposes.) Counsel was unable to elicit information as to who had suggested and who had approved the change order, and as to who had ordered the temporary barrier. During the proceedings for a new trial it was claimed, and the court apparently agreed, that there had been obvious evasion and a lack of cooperation on the part of these expert witnesses. Said the court: "The second point of newly discovered evidence is the State papers. We are persuaded by the affidavits before us, and the trial record, which alone we have power to

consider, that the plaintiffs were surprised by the testimony they got from the State witnesses on the point, that they tried diligently at the time to dig out from Mr. Engle [the resident engineer] the question of his participation in the subsequent improvements of the road, and that they failed as a result of obtaining from Mr. Engle something less than that degree of candor which one expects from a State official.'' After the trial and in support of respondents' motion for a new trial, respondents' counsel took various depositions from which it was made to appear that the change order had been signed by the resident engineer, although he had denied this.

All of the evidence presented in support of the motion for a new trial was presented under the claim that it constituted newly discovered evidence, and it appears from the record that the trial court considered it to be such. Appellant argues that it was neither newly discovered nor of sufficient materiality, being principally impeaching in character, to furnish support for the new trial order. Appellant points out that the making of the change order and the installation of the temporary barricade was known prior to trial by counsel for respondents. Respondents argue that although their counsel knew these things they did not know they would be material at the trial and that they became material only when the appellant produced state employees who testified that the road conditions were safe. It was shown also that an effort had been made during the trial to obtain the impeaching evidence but that the attempt failed.

Concerning this impeaching evidence, it may be said first that although a new trial will not ordinarily be granted on the ground of newly discovered evidence where the evidence is merely impeaching in character (*People* v. *McCurdy,* 68 Cal. 576 [10 P. 207]), nevertheless there is no hard and fast rule that such evidence cannot constitute newly discovered evidence of such material character as to support an order granting a new trial.

After hearing arguments in support of and in opposition to the motion for a new trial, the court ruled that the evidence under the circumstances did constitute newly discovered evidence and that counsel for respondents could not be properly charged with lack of diligence. These were matters for the trial court's determination, and upon this record we cannot reject its rulings.

The record presents error in law which the trial court

deemed prejudicial. It also presents a sustainable ruling on newly discovered evidence which might well materially affect the issue of primary negligence. We find no abuse of discretion in the making of the new trial order. The order is therefore affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied October 5, 1959, and appellant's petition for a hearing by the Supreme Court was denied November 3, 1959.