[Crim. No. 8289.   Second Dist., Div. Two.   Sept. 18, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. FREDERICK PIERCE MOTEN, Defendant and Appellant.

Frederick Pierce Moten, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Defendant was convicted of violating section 288 of the Penal Code, in that he did "commit a lewd and lascivious act upon and with the body . . . of Jeannette Moten," his daughter, who at the time of trial was 12 years of age. Defendant was represented below by the public defender and appeals in propria persona. The case was tried upon the transcript of the preliminary hearing and upon additional evidence taken at the trial. The prosecution's witnesses were Jeannette Moten, defendant's daughter, Mary

Ann Moten, defendant's wife, and Grace Ann White, aged 17, Jeannette Moten's cousin.

The testimony on which the defendant was convicted is as follows: Jeannette Moten testified at the time of the preliminary hearing that she was 12 years old and that defendant is her father. On March 9, 1961, her mother was out of the house working when Jeannette arose in the morning; she went to the bathroom wearing her slip at the time. While she was in the bathroom her father entered and said, "If your mother won't act like a wife you will." He pulled at her slip and tore her underwear and then he rubbed his hands on her private parts. He said that if she screamed or said anything he was going to kill her. He then began to expose his private parts when her cousin Grace knocked at the door and he let her go. She ran into the bedroom, picked up a dress and sweater and ran out to her cousin. This all occurred between 7 and 7:15 a.m. Later that day she told the police what had happened. At the trial the torn panties were introduced into evidence.

Grace White, the cousin, testified that she had come by the house to take Jeannette to school; at that time there was a car in the driveway that was dark green in color; she knocked on the front door and finding it open she pushed it and called. Jeannette came running to her, crying. After a brief conversation with her Grace took her to the police. She also testified at the preliminary hearing that when she was out in front of the house she heard a rumbling in the bathroom and later at the trial she testified that she heard a noise "like there was something falling over."

At the preliminary hearing defendant's wife testified that defendant is her husband, that Jeannette Moten is her daughter and that Jeannette was born on August 27, 1948.

Defendant testified in his own behalf. He stated that he had moved out of the family home in January but that he came back once or twice a week after that to sleep with his wife and to contribute what he could to the support of the children. On the morning of March 9th he visited the home at about 2 a.m. His wife let him in and he joined her in bed. They both went to sleep and he awoke about five or ten minutes after six and found his wife gone. He put on his clothes and got in his car and caught up with her at the nearest bus stop, about a half mile from the house, and offered her a ride. She having refused he then went to a restaurant and had breakfast; from there he went to the Department of

Employment where he arrived about 7:15 or 7:30 a.m. He was successful in obtaining employment and left the Department of Employment before 8 a.m. He was paid for his day's work, cashed the check, bought some groceries and returned home with these at about 7 p.m. He entered over his wife's opposition and his wife began to strike him with a piece of pipe, chasing him out of the house. His wife had told him several times in recent years that if he did not give her grounds for divorce she would manufacture grounds. He denied that he molested his daughter at any time.

On rebuttal defendant's wife testified that defendant did not meet her at the bus stop on the morning of March 9th. When she left the house defendant's car was in the driveway. It was either black, blue or green in color.

Defendant argues generally that the prosecution's witnesses were incompetent. There was no objection to the testimony of any of the witnesses at the trial, but such an objection would have been fruitless. ■ The only possible argument that could be made is that defendant's wife is not a "competent" witness under Penal Code section 1322. Although the code section is phrased in terms of competency the decisions establish that the statute relates to a privilege which may be waived by failure to object. (*People* v. *Singh,* 182 Cal. 457, 483 [188 P. 987] ; *People* v. *Wilkins,* 135 Cal. App.2d 371, 379 [287 P.2d 555] ; *People* v. *Odmann,* 160 Cal. App.2d 693, 696 [325 P.2d 495].) Furthermore, this statute excepts from its operation "cases of criminal violence . . . upon the child . . . of one by the other. . . ." ■ The crime of taking indecent liberties with a child in violation of section 288 Penal Code is considered an act of violence within the meaning of Penal Code section 1322. (*People* v. *Kasunic,* 95 Cal.App.2d 676 [213 P.2d 778] ; *People* v. *James,* 9 Cal. App.2d 162 [48 P.2d 1011].)

■ Defendant contends that the evidence is not sufficient to support a conviction in that the testimony of the prosecution witnesses was not reliable, they contradicted each other and they perjured themselves. The weight of the evidence is for the trier of fact. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].) "A mere conflict in the evidence which involves only a question of the credibility of witnesses does not present a question of law to a reviewing court." (*People* v. *White,* 189 Cal.App.2d 642, 643 [11 Cal.Rptr. 470].) "It was with the trial court, as the trier of the questions of fact, to accept as true or reject as untrue the testimony given before it by

any of the witnesses. . . . And, where, as here, there is no showing, or nothing on the face of the record to indicate, that the triers of the fact have arbitrarily or without just reason accepted or rejected particular testimony, the presumption must be indulged on appeal that there has been no arbitrary rejection or acceptance of any testimony, but that the triers have, for sufficient legal reasons, accepted as true the testimony with which the final result arrived at or the judgment harmonizes and rejected as of no probative value testimony which tended to lead to an opposite conclusion." (*Biurrun* v. *Elizalde,* 75 Cal.App. 44, 52, 53 [242 P. 109].) The trier of fact is the exclusive judge of the credibility of witnesses. (Code Civ. Proc., § 1847.)

■ Defendant contends that he was not adequately represented at the trial and that his attorney failed to introduce defense witnesses as requested by defendant and failed thoroughly to inquire into the credibility of the witnesses against him. In *People* v. *Monk,* 56 Cal.2d 288 [14 Cal.Rptr. 633, 363 P.2d 865], the same contentions were made. The court stated at pages 299-300: "He further asserts that the public defender refused to examine the court-appointed psychiatrists, to call witnesses the defendant requested, and to bring defendant transcripts of the court proceedings. The psychiatrists were not called as witnesses, but reports by them were introduced into evidence. Whether they should have been called and examined in court was a matter within the discretion of counsel. Defendant does not state the names of the additional witnesses whom he wished to call nor does he indicate what the nature of their testimony would have been. Therefore there is no basis for assuming that defense counsel did not exercise proper judgment in not calling additional witnesses. . . . Moreover, even if there had been any incompetency on the part of defense counsel, it is questionable whether defendant in the instant case could complain on appeal. ■ A defendant may complain at any time during the trial that his counsel is not adequately representing him thereby affording the trial court an opportunity to correct the situation, but if a defendant fails to avail himself of this privilege at the trial level, he cannot ordinarily after an adverse judgment, first complain of the matter on appeal. . . . Under these circumstances we are not impressed that defendant's right to a fair trial was violated."

Further it appears from the record that counsel carefully brought to light, through cross-examination, many circum-

stances which tended to show bias on the part of prosecution witnesses, and motives which might induce them to prevaricate. "We do not find that counsel's representation of appellant was of 'such a low order as to render the trial a farce and mockery of justice' as contended by appellant, nor that the situation is comparable to *People* v. *Davis,* 48 Cal.2d 241 [309 P.2d 1] upon which he relies. ▮ It is stated in *People* v. *Dupree,* 156 Cal.App.2d 60, 69 [319 P.2d 39] : 'Before it can be held that an accused's representation by counsel was inadequate to the degree that it violated his right to representation under the Fourteenth Amendment to the Constitution of the United States, an extreme case must be disclosed. The representation must be of such a low order as to render the trial a farce and a mockery of justice (*Diggs* v. *Welch,* 148 F.2d 667, 669 [80 U.S. App. D.C. 5] ), or it must be shown that the essential integrity of the proceeding as a trial was destroyed by the incompetency of counsel (*United States* ex rel. *Weber* v. *Ragen,* 176 F.2d 579, 586) . . . . While the opportunity to try his former lawyer has its undoubted attraction to a disappointed prisoner, the courts are uniform in holding that the claimed absence of effective representation will not be sustained unless the circumstances surrounding the trial indicate a representation so lacking in competence that it becomes the duty of the court to observe and to correct it.' " (*People* v. *Prado,* 190 Cal.App.2d 374, 377 [12 Cal.Rptr. 141].) See also *People* v. *Robillard,* 55 Cal.2d 88, 97 [10 Cal.Rptr. 167, 358 P.2d 295] ; *People* v. *Wein,* 50 Cal. 2d 383, 410 [326 P.2d 457]. It appears from the record that counsel competently handled the trial of the case.

▮ Defendant's remaining contention is that the motion for new trial should have been granted because of newly discovered evidence. The evidence referred to is that contained in the probation report which appellant asserts further reflects on the credibility of the prosecution witnesses. Section 1181, subdivision 8, Penal Code provides that a new trial may be granted "[w]hen new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial." Appellant does not tell us what matter the probation report contains which would further reflect on the credibility of the prosecution witnesses, but it is implied that the report sets forth the history of the relationship of appellant and his wife and the unsuccessful marriage. It is not contended that the report contains matter of which the defendant had no knowledge at

the time of the trial, which knowledge he could have communicated to his attorney. He bases his contention on "newness" merely on the fact that the report itself was not available until after the trial. ▮ Furthermore, newly discovered evidence which would merely impeach or discredit a witness does not compel the granting of a new trial (*Smith* v. *Sugich Co.*, 179 Cal.App.2d 299 [3 Cal.Rptr. 718]), and a new trial will not ordinarily be granted for newly discovered evidence of that character. (*Routh* v. *Palm Oil Co.*, 160 Cal. App.2d 359 [324 P.2d 936].) ▮ While it is true that the granting of a new trial upon the discovery of highly material impeaching evidence will not be held to constitute an abuse of discretion (*Charles* v. *Rice*, 173 Cal.App.2d 599 [343 P.2d 760]), when the trial court denies such a motion, the reviewing court should not ordinarily interfere.

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.