[Civ. No. 23577.   First Dist., Div. One.   Sept. 1, 1967.]

MARY B. LUBECK, Plaintiff and Appellant, v. ANTHONY RODRIGUES LOPES et al., Defendants and Appellants; EVE KATHLEEN DOONEY, Defendant and Respondent.

Bruce F. Allen, Popelka, Graham, Van Loucks & Allard and Geoffrey Van Loucks for Plaintiff and Appellant.

Campbell, Custer, Warburton & Britton and Alfred B. Britton, Jr., for Defendants and Appellants.

Hoge, Fenton, Jones & Appel and John W. Appel for Defendant and Respondent.

MOLINARI, P. J.—In this action to recover damages for personal injuries sustained by plaintiff, Mary Lubeck, as a result of a collision between the automobile being driven by defendant Eve Dooney, in which plaintiff was riding, and the automobile driven by defendant Anthony Lopes in the course and scope of his employment for defendant B. F. Goodrich Company, defendants Lopes and Goodrich appeal from the

order of the trial court granting plaintiff's motion for a new trial as to them on the ground of newly discovered evidence, and plaintiff appeals from the judgment, entered upon a jury verdict, in favor of defendants, Dooney, Lopes and Goodrich. Lopes and Goodrich contend on their appeal that the trial court abused its discretion in granting a new trial as to them, and plaintiff raises the following issues on her appeal from the judgment in favor of all defendants: (1) The trial court erred in granting a nonsuit as to Dooney on that cause of action against Dooney which was predicated upon plaintiff's status as a passenger in Dooney's automobile at the time of the accident; (2) the trial court erred in refusing to instruct the jury in terms of the res ipsa loquitur instructions requested by plaintiff; (3) the trial court erred in giving the "mere fact" instruction requested by Lopes; and (4) because of the repeated instructions which were given on burden of proof, an extra burden of proof was improperly placed on plaintiff. We will detail the facts relating to each of these issues when we consider them individually. At this point, therefore, it suffices to set out several general facts.

The collision in which plaintiff was injured occurred at approximately 8:10 a.m. on May 27, 1964 at the intersection of Julian and Market Streets in San Jose. This intersection is controlled by automatic, electric stop and go signals, which were in operation at the time of the accident. The accident occurred when the right front of Dooney's automobile, which was traveling northbound on Market Street, hit the left rear of Lopes' vehicle, which was traveling westbound on Julian Street. Conflicting evidence was presented as to the respective speeds of the two vehicles at the time of accident and as to the color of the traffic light as the two cars approached and entered the intersection.

### *Propriety of Granting a New Trial*
### *As to Lopes and Goodrich*

Following the entry of judgment in the instant case plaintiff moved for a new trial as against all defendants on various grounds including that of newly discovered evidence. The newly discovered evidence upon which plaintiff's motion was based, which evidence was called to the attention of the trial court by means of declarations attached to plaintiff's motion, consisted of testimony of several state and city licensing officials, a private investigator, and plaintiff's attorney to the effect that a certain Doctor Magginis, who, according to Lopes' testimony during the trial, had examined Lopes' eyes

in August 1964 at his office on Potrero Street in Richmond and had subsequently died, had never been listed in the state licensing records as the holder of a physician's or optometrist's license, had not been listed in the Richmond records as the owner of a Richmond business license for the period covering 1963 to 1965, had not been listed in the Richmond telephone directory or in the records of the telephone company or in the police directory of doctors and optometrists for that period, and was generally unknown among local optometrists, opticians and pharmacists.

In opposition to plaintiff's motion, Lopes filed a declaration in which he stated that during his testimony at the trial he had erroneously identified the person who examined his eyes as Doctor Magginis and had erroneously testified that Magginis was deceased; and that at the time of the trial he was under extreme pressure by reason of the illness of his wife and daughter. Finally Lopes' declaration contained the name and address of the doctor who had examined his eyes in September 1964 and further contained the results of this examination to the effect that his vision was 20/20 in each eye individually as well as in both eyes, and that Lopes did not need glasses for distance vision. Following argument on plaintiff's motion the trial court granted the motion as to Lopes and Goodrich solely on the ground of newly discovered evidence in that the declarations which plaintiff presented to the court in support of her motion cast serious doubts upon the credibility of Lopes' testimony throughout the trial, his credibility being one of the major issues in the trial.

In arguing that the trial court erred in granting plaintiff's motion for a new trial, Lopes and Goodrich recognize that the granting of a new trial on the ground of newly discovered evidence is discretionary with the trial court and that, accordingly, such an order can only be reversed on appeal where an abuse of discretion is clearly shown. (*Kyle* v. *Stone*, 234 Cal.App.2d 286, 293 [44 Cal.Rptr. 390]; *South Santa Clara etc. Dist.* v. *Johnson*, 231 Cal.App.2d 388, 407 [41 Cal.Rptr. 846].) However, they argue that in the instant case the newly discovered evidence was of such an insignificant nature that the granting of plaintiff's motion for a new trial constituted an abuse of the trial court's discretion. With this contention we agree.

The claim of newly discovered evidence as a ground for new trial is uniformly looked on by the courts with distrust and disfavor because the policy of the law requires a

litigant to exhaust every reasonable effort to produce at his trial all existing evidence on his behalf. (*South Santa Clara etc. Dist.* v. *Johnson, supra,* 231 Cal.App.2d 388, at p. 407; *People* v. *Loar,* 165 Cal.App.2d 765, 777 [333 P.2d 49]; *Nebelung* v. *Norman,* 14 Cal.2d 647, 655 [96 P.2d 327].) ■ The court is, however, authorized to permit production of newly discovered evidence if its nature makes a different judgment probable on retrial, if there is no lack of diligence in failing to produce it at the trial, and if the evidence is not primarily cumulative. (*Ulwelling* v. *Crown Coach Corp.,* 206 Cal.App.2d 96, 128 [23 Cal.Rptr. 631]; *Philpott* v. *Mitchell,* 219 Cal.App.2d 244, 249 [32 Cal.Rptr.. 911]; *Fitzgerald* v. *Fishburn,* 219 Cal.App.2d 152, 154 [33 Cal.Rptr. 148]; *Luchs* v. *Ormsby,* 171 Cal.App.2d 377, 390 [340 P.2d 702]; *Dayton* v. *Landon,* 192 Cal.App.2d 739, 746 [13 Cal.Rptr. 703]; *Kyle* v. *Stone, supra,* 234 Cal.App.2d 286, at p. 294.) ■ But newly discovered evidence to impeach or discredit a witness, even when discovered shortly after trial and made the basis of a motion for new trial, is not sufficient to require granting of a new trial. (*Dandini* v. *Dandini,* 146 Cal.App.2d 193, 197 [303 P.2d 556]; *Dankert* v. *Lamb Finance Co.,* 146 Cal.App. 2d 499, 502 [304 P.2d 199]; *Smith* v. *Sugich Co.,* 179 Cal. App.2d 299, 313 [3 Cal.Rptr. 718]; *Routh* v. *Palm Oil Co.,* 160 Cal.App.2d 359, 361 [324 P.2d 936]; *Wilson* v. *Kopp,* 114 Cal.App.2d 198, 206 [250 P.2d 166]; *Peterson* v. *Peterson,* 121 Cal.App.2d 1, 11 [262 P.2d 613].)

■ In the instant case, we are of the opinion that the evidence upon which the trial court granted a new trial cannot be characterized as material in the sense that its use by way of impeachment upon a retrial would make a different result probable. In the first place, we note that the evidence which plaintiff produced in support of her motion for a new trial served to impeach Lopes' testimony during the trial only insofar as he had named Doctor Magginis as the doctor who had previously examined his eyes. The newly discovered evidence did not in any way controvert evidence presented during the trial concerning the actual condition of Lopes' eyesight. The record merely discloses in this regard that Lopes was asked ". . . do you have trouble with your eyesight?" to which he responded "No, sir." Following this response Lopes was then asked when he had last had an eye examination and who his eye doctor was. It was then that he stated that his eye doctor was Dr. Magginis. Under the circumstances, since the actual condition of Lopes' eyesight was not inquired into fur-

ther, it is doubtful that such condition was a material issue in the trial. In any event there is nothing in the record which discloses that the newly discovered evidence would in any way show that Lopes had poor eyesight or that he had had any trouble with his eyesight. Accordingly, it is clear that the name of the doctor who had examined his eyes was merely a collateral matter. Thus, although a trial court may, in its discretion, allow impeachment of a witness as to a collateral matter (see Witkin, Cal. Evidence (2d ed. 1966) §§ 1258-1260, p. 1161 et seq.), it is not probable that such impeachment would result in a different judgment in the instant case.

Moreover, Lopes' testimony during the trial concerning Doctor Magginis was in itself conflicting and displayed a degree of uncertainty and confusion on Lopes' part, so that it can hardly be said that the newly discovered evidence upon which the new trial was granted would have a significant effect in attacking Lopes' credibility upon a retrial. We refer to the fact that when Lopes was first questioned about his eyes and asked the name of his eye doctor, he replied, "Now he is dead. Now I go to Dr. *MacGinnis*." However, when questioned again about Doctor Magginis, Lopes, in reply to the question "He is in San Francisco?" stated "No. On Potrero over in Richmond. I also told you that he is dead. . . . Now I am going to go—I didn't go yet—I am going to De Gloria."

Finally we note that Lopes' testimony as to the details of the accident itself was to some degree conflicting. Accordingly, although Lopes' credibility was, as indicated by the trial court, an important issue in the case, it is apparent that the effect of his testimony was already weakened by the conflicts which existed in his testimony concerning the material issues in the case.

In support of the trial court's order granting her a new trial plaintiff relies solely on the case of *Charles* v. *Rice,* 173 Cal.App.2d 599 [343 P.2d 760]. In that case, which involved an action for personal injuries arising out of an automobile accident, certain highway officials testified during the trial that the highway upon which the accident occurred was, in their opinion, safe for travel of the general public at the time of the accident despite the fact that the highway was at that time under construction and repair by the defendants. In an effort to impeach this testimony, the plaintiffs attempted to prove that after the accident a change order had been made in the defendants' contract, requiring a permanent barrier on the road and that instead the defendants had erected a tem-

porary barrier. However, the highway officials who had testified that the road was safe for travel denied the existence of such a change order. Following a defense verdict the plaintiffs moved for a new trial partly on the ground of newly discovered evidence, this evidence consisting of depositions which the plaintiffs had taken of the same highway officials after the trial, in which depositions the officials admitted that they had made the change order the existence of which they had denied at the trial. The trial court having granted the plaintiffs' motion for a new trial in part on the ground of newly discovered evidence, this order was affirmed on appeal on the ground that the trial court had not abused its discretion in making the order. In our opinion, the *Charles* case is on its facts clearly distinguishable from the instant case. There the newly discovered evidence served to impeach the highway witnesses' testimony concerning the safeness of the highway on which the accident occurred, that being a material issue in the case. Here, on the other hand, the newly discovered evidence served only to impeach Lopes' testimony as to the name of the person who had examined his eyes, this fact not being material to the case.

## The Nonsuit

At the conclusion of plaintiff's case the trial court granted Dooney's motion for a nonsuit as to plaintiff's cause of action predicated upon her status as a passenger in the Dooney vehicle. Plaintiff contends that the granting of a nonsuit as to this cause of action was error since the jury could have concluded from the evidence that she gave Dooney "compensation" for the ride as that term is used and interpreted in Vehicle Code section 17158.[1]     Before considering the evidence presented on this issue, we set forth as follows the rules applicable to the granting of a nonsuit: The power of the trial court to grant a nonsuit is limited to those situations in which, disregarding conflicting evidence and giving to the plaintiff's evidence all the value to which it is legally

---

[1]Vehicle Code section 17158, commonly referred to as the "guest statute," provides as follows: "No person riding in or occupying a vehicle owned by him and driven by another person with his permission and no person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of the vehicle or against any other person legally liable for the conduct of the driver on account of personal injury to or the death of the owner or guest during the ride, unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or willful misconduct of the driver."

entitled, the trial court properly concludes that there is no substantial evidence to support a verdict in favor of the plaintiff. (*O'Keefe* v. *South End Rowing Club,* 64 Cal.2d 729, 733 [51 Cal.Rptr. 534, 414 P.2d 830], and cases cited therein.) ▮ In granting a nonsuit the trial court must assume that all of the evidence received in favor of the plaintiff relevant to the issues is true, and all presumptions and inferences must be construed most favorably to the plaintiff's case. (*Hawley* v. *Orange County Flood etc. Dist.,* 211 Cal. App.2d 708, 713 [27 Cal.Rptr. 478] ; *Agnew* v. *Parks,* 172 Cal.App.2d 756, 770 [343 P.2d 118] ; *White* v. *Shultis,* 177 Cal.App.2d 641, 645 [2 Cal.Rptr. 414].)

With these principles in mind we turn to the evidence presented in the instant case concerning the nature of the relationship between plaintiff and Dooney for the purpose of determining whether such evidence is susceptible to an inference that at the time of the accident plaintiff was riding as a passenger rather than as a guest in the Dooney automobile. Plaintiff and Dooney first met in February 1964 when a mutual friend arranged for Dooney to drive plaintiff, who is an epileptic, to a meeting of the Santa Clara Epilepsy Society, in which organization Dooney was a member. After having met on that occasion plaintiff and Dooney saw each other occasionally. On May 26, 1964, the day before the accident, Dooney invited plaintiff to her home for a visit. During that visit the conversation turned to a dispute which plaintiff was having with an encyclopedia company concerning a bill. At that time Dooney volunteered to call an attorney she knew about plaintiff's problem. Accordingly, Dooney, in plaintiff's presence, telephoned to a Mr. Lund, an attorney whose legal advice Dooney had previously obtained, and told him about plaintiff's problem. Although Mr. Lund gave Dooney advice concerning this problem, which advice Dooney relayed to plaintiff at the conclusion of the telephone conversation, plaintiff expressed her desire to talk to Mr. Lund personally about the problem. Accordingly, Dooney again telephoned Mr. Lund and made an appointment for plaintiff to see him the following day at 10 a.m. Following this telephone conversation Dooney offered to drive plaintiff to this appointment since Dooney had already planned to drive her son into town the next morning for a pre-school examination which was to be held at 8:15 a.m. Accordingly, Dooney agreed to call for plaintiff at 7:30 a.m. the following morning and to drive plaintiff to Mr. Lund's office after delivering her son to his

appointment. This plan was carried out and the accident occurred after Dooney had called for plaintiff and while Dooney was en route to her son's appointment.

It is true, as plaintiff points out, that the term "compensation" as used in the guest statute is not limited to the payment of cash or its equivalent. Rather such compensation may consist of any tangible benefit given to the driver, where such benefit is the motivating influence for supplying transportation to the rider. (*Martinez* v. *Southern Pac. Co.,* 45 Cal.2d 244, 250 [288 P.2d 868]; *Gillespie* v. *Rawlings,* 49 Cal.2d 359, 364 [317 P.2d 601]; *Sadberry* v. *Griffiths,* 191 Cal.App.2d 610, 616 [12 Cal.Rptr. 773]; *Clapp* v. *Hester,* 169 Cal.App.2d 558, 559 [337 P.2d 525]; *Follansbee* v. *Benzenberg,* 122 Cal.App.2d 466, 471 [265 P.2d 183, 42 A.L.R.2d 832].) However, where an inference of tangible benefit conferred by the rider upon the driver rests wholly in conjecture, such inference is insufficient to constitute compensation. (*Martinez* v. *Southern Pac. Co., supra,* at p. 251; *Ray* v. *Hanisch,* 147 Cal.App.2d 742, 749 [306 P.2d 30].)

In view of these principles it is apparent that the evidence presented in the instant case, even when viewed in the light most favorable to plaintiff, does not support an inference that plaintiff furnished Dooney with any compensation for the ride during which the subject accident occurred. Clearly no monetary consideration passed from plaintiff to Dooney, plaintiff having testified that she made no arrangements to pay for her ride with Dooney. And contrary to plaintiff's argument, the evidence is not reasonably susceptible to an inference that plaintiff in any way conferred a tangible benefit upon Dooney by riding to Mr. Lund's office in Dooney's automobile. In arguing that Dooney drove plaintiff to Mr. Lund's office in an attempt to induce plaintiff to become a member of the Santa Clara Epilepsy Society, plaintiff is engaging in the rankest speculation. Clearly such an inference is too conjectural to constitute evidence upon which the trial court would be required to allow plaintiff to go to the jury on the passenger theory.

Nor is there any merit to plaintiff's argument that "The jury could have concluded from the evidence that in providing the transportation for Mrs. Lubeck to see Mr. Lund, the attorney, Mrs. Dooney was doing so to further that business relationship, was acting for Mr. Lund as well as for Mrs. Lubeck." Even if the evidence was reasonably susceptible to the inference that in furnishing transportation for plaintiff, Dooney was furthering the business relationship between

plaintiff and Mr. Lund, this fact would not be indicative of any tangible benefit passing from plaintiff, the rider, to Dooney, the driver, this being the requisite compensation in order to give a rider the status of passenger rather than guest. Accordingly, since the record is devoid of any evidence showing that plaintiff furnished compensation in any form to Dooney in return for the ride to Mr. Lund's office, we conclude that the trial court properly granted Dooney's motion for a nonsuit as to plaintiff's cause of action predicated upon her status as a passenger in the Dooney automobile.

### Res Ipsa Loquitur

██ Plaintiff's second contention is that the trial court erred in refusing to instruct the jury in the terms of the modified res ipsa loquitur instruction which she requested.[2] We have concluded that there is no merit to this contention. In the first place, as to Dooney's liability, since we have concluded that the trial court properly granted a nonsuit on plaintiff's cause of action against Dooney predicated upon plaintiff's status as a passenger in Dooney's automobile, it is apparent that under the guest statute the sole basis for Dooney's liability in this action would be wilful misconduct or intoxication. And since it is well established that the doctrine of res ipsa loquitur, which permits the drawing of an inference that ordinary care was not used, cannot serve as a means of establishing intoxication or wilful misconduct (*Phillips* v. *Noble*, 50 Cal.2d 163, 167 [323 P.2d 385]; *Fiske* v. *Wilkie*, 67 Cal.App.2d 440, 449-452 [154 P.2d 725]), it is apparent that the instruction which plaintiff requested would not have been proper as to Dooney. Accordingly, even assuming that the instruction was applicable as to Lopes and Goodrich, it was an erroneous instruction because by its language it was applicable to *all* defendants, including Dooney. ██ It is not error for a trial court to refuse a proposed instruction which is misleading (*Pobor* v. *Western Pac. R.R. Co.*, 55

---

[2]Specifically plaintiff's requested res ipsa instruction provided as follows: "From the happening of the accident involved in this case, an inference arises that a proximate cause of the occurrence was some negligent conduct on the part of a defendant. That inference is a form of evidence and unless there is contrary evidence sufficient to meet or balance it, the jury should find in accordance with the inference.

"When there is any evidence to the contrary, you must weigh all of the evidence bearing upon the issue of such defendant's negligence. If the evidence tending to prove that the accident was caused by a failure of a defendant to exercise the care required of him has greater weight than the evidence to the contrary, you will find in favor of the plaintiff on that issue."

Cal.2d 314, 324 [11 Cal.Rptr. 106, 359 P.2d 474]; *Alvarez* v. *Felker Mfg. Co.*, 230 Cal.App.2d 987, 1001 [41 Cal.Rptr. 514]); nor is the court required to correct, modify or edit such an instruction, or give instructions which are not correct statements of the law. (*Alvarez* v. *Felker Mfg. Co., supra*; *Hardin* v. *Elvitsky*, 232 Cal.App.2d 357, 372 [42 Cal.Rptr. 748].)

We are satisfied, moreover, that the proposed instruction on res ipsa loquitur was not proper even with respect to Lopes and Goodrich because it would have the effect of placing these defendants at a serious disadvantage. In order to avoid liability said defendants would have been required, under the instruction, to exculpate themselves, while Dooney, who may have been equally or solely negligent, but whose liability could only be predicated upon wilful misconduct or intoxication, would not be required to do so. (See *Phillips* v. *Noble, supra,* 50 Cal.App.2d 163, 167.)

### *"Mere Fact" Instruction*

■ Plaintiff next contends that the giving of the following instruction requested by Lopes was error: ''The burden rests upon plaintiff to prove by a preponderance of the evidence the elements of her damage, if any. The mere fact that an accident happened, considered alone, would not support a verdict for any particular sum.'' The basis of this contention is that the presumption of negligence based upon violation of a statute was applicable in the instant case, the jury having been instructed concerning this presumption and also having been instructed in terms of those provisions of the Vehicle Code relating to speeding and the effect of green, yellow, and red signals at a controlled intersection.[3] In making this argument, plaintiff has confused the instruction given in the instant case (BAJI No. 171-A) with that instruction which provides that ''The mere fact that an accident happened considered alone, does not give rise to a legal inference that it was caused by negligence or that any party to this action . . . was negligent.'' (BAJI No. 131.1) Admittedly, as pointed out by plaintiff, the giving of the latter instruction has been held to be error in cases where a presumption of negligence arises based upon the violation of a

---

[3]Plaintiff also makes the argument that the giving of the subject instruction was error because of the applicability of the doctrine of res ipsa loquitur in the instant case. Since we have concluded that that doctrine was not applicable in this case, we deem it unnecessary to consider this aspect of plaintiff's contention.

statute. (*Alarid* v. *Vanier*, 50 Cal.2d 617, 625 [327 P.2d 897].) However, no similar or parallel principle exists with regard to the instruction given in the instant case. That instruction, unlike BAJI No. 131.1, has no bearing on the question of liability; rather it relates solely to the issue of damages. As such it is a proper instruction despite the applicability of the presumption of negligence based upon a statutory violation, which presumption concerns the question of liability alone and not that of damages.

### Instruction on Burden of Proof

Plaintiff's final contention is that by giving repeated instructions on the subject of burden of proof, plaintiff's burden of proof was increased. In making this argument, plaintiff notes that the trial court gave the instruction on burden of proof which she requested.[4] However, she argues that it was error for the court to give, in addition, three other instructions relating to burden of proof, two of these having been requested by defendant Lopes[5] and one having been given on the court's own motion.[6] The only case which plaintiff cites in support of her contention is *Persike* v. *Gray*, 215 Cal.App.2d 816, 822 [30 Cal.Rptr. 603]. That case, however, is not authority for the proposition that the repetition of instructions on the subject of burden of proof constitutes error. *Persike* held that the undue emphasis placed on the plaintiff's burden of proof by repeating it in four instructions, while perhaps not serious standing alone, was a factor to be weighed in determining whether prejudice resulted from the court's erroneously instructing the jury, despite the

---

[4]This instruction was in the form of BAJI No. 21 Revised.

[5]These instructions told the jury that if the evidence on any issue did not preponderate in favor of the party making the charge, then the party has not fulfilled his burden of proof and that the burden was upon plaintiff to prove by a preponderance of the evidence the elements of her damage, if any.

[6]This instruction provided as follows:

"'The burden is upon the plaintiff to prove by a preponderance of the evidence that the defendant Dooney was guilty of willful misconduct and that such willful misconduct was a proximate cause of injury to the plaintiff. If plaintiff has fulfilled this burden, she is entitled to recover from said defendant. If plaintiff has failed to carry this burden, said defendant is entitled to your verdict. The burden is upon the plaintiff to prove by a preponderance of the evidence that the defendant Lopes was negligent and that such negligence was a proximate cause of injury to the plaintiff. If plaintiff has fulfilled this burden, she is entitled to recover from defendants Lopes and B. F. Goodrich Company. If plaintiff has failed to carry this burden, said defendants are entitled to your verdict.'"

applicability of res ipsa loquitur, that the mere happening of the accident did not give rise to an inference of negligence. In the instant case the instructions on burden of proof, while repetitious, were correct statements of the law. They were not, however, coupled with other factors as to make the charge unfair as in *Persike,* where such instructions were coupled with an erroneous instruction on the issue of negligence. Accordingly, the rule applicable here is that repetitiousness of instructions alone is not reversible error. (*Lebkicher* v. *Crosby,* 123 Cal.App.2d 631, 640 [267 P.2d 361]; *Sullivan* v. *Matt,* 130 Cal.App.2d 134, 143 [278 P.2d 499]; *Chambers* v. *Southern Pac. Co.,* 148 Cal.App.2d 873, 878 [307 P.2d 662]; *Lewis* v. *Doyle,* 149 Cal.App.2d 176, 183 [307 P.2d 965]; see *Taha* v. *Finegold,* 81 Cal.App.2d 536, 544-545 [184 P.2d 533].)

The order granting a new trial is reversed; the judgment is affirmed. Defendants to recover costs on appeal.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied September 22, 1967, and the petition of the plaintiff and appellant for a hearing by the Supreme Court was denied October 25, 1967. Peters, J., was of the opinion that the petition should be granted.