Filed 11/3/20  P. v. Byrd CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ERNEST BYRD,<br><br>Defendant and Appellant. | F077681<br><br>(Super. Ct. No. F17904653)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan M. Skiles, Judge.

Byron C. Lichstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

In a consolidated trial, a jury convicted defendant of second degree robbery (Pen. Code,[1] § 211; count 1), an incident that occurred in May 2017 (Frierson robbery or robbery); and first degree burglary (§ 460, subd. (a); count 2) and resisting, obstructing, or delaying an officer (§ 148, subd. (a)(1); count 3), an incident that occurred in August 2017 (Herrera burglary or burglary). The jury also found true a personal use of a firearm enhancement (§ 12022.53, subd. (b)) as to count 1, and the court found true two prior serious felony convictions (§ 667, subd. (a)(1)) that also qualified as strike priors.

On appeal, defendant contends his robbery conviction should be reversed because the court erred in refusing to sever it from the burglary charge. He further argues the court reversibly erred in prohibiting pertinent cross-examination of the robbery victim regarding whether he sold marijuana and in denying defendant a continuance to file a motion for new trial based on evidence of the victim's alleged drug dealing. He also asserts his counsel was ineffective in failing to adequately argue mitigating information in support of defendant's motion to strike his prior strike convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). Finally, he contends he should be entitled to a new sentencing hearing for the court to consider whether to strike his firearm and prior serious felony enhancements in light of Senate Bills Nos. 620 (2017–2018 Reg. Sess.) and 1393 (2017–2018 Reg. Sess.), respectively.

We remand for a new sentencing hearing to permit the court to exercise its discretion under Senate Bills Nos. 620 and 1393. In all other respects, we affirm the judgment.

## FACTUAL BACKGROUND

On August 10, 2017, defendant and another perpetrator burglarized a house while the occupants (the Herreras) were away. That day, Reina Herrera received a call from police notifying her someone had broken a window in her house. When Herrera returned

---

[1] Undesignated statutory references are to the Penal Code.

2.

home, the Herreras' jewelry and money were missing, including a bundle of approximately seventy $2 bills they had kept in a jar. The kitchen window was broken, and the house had been ransacked.

When responding to the burglary call, Officer Gunter Meiss saw two individuals, including defendant, walking on the south side of the Herreras' house. When defendant and the other individual saw Officer Meiss, they started to run. Officer Meiss pursued them in his police car. Defendant and the other man split up, and Officer Meiss followed defendant. Officer Meiss came within 15 yards of defendant when defendant jumped over a fence and Officer Meiss lost sight of him. Officer Meiss and another officer established a perimeter to contain the suspects. The police ultimately apprehended defendant inside a shed in a neighboring backyard after a police dog alerted them to his presence. Upon searching defendant, the police discovered jewelry and money, including a bundle of $2 bills in defendant's pocket. Herrera identified the jewelry and $2 bills as hers but reported her family's real gold jewelry was still missing. Officers identified defendant at trial as the individual they saw by the Herreras' property whom they pursued and ultimately apprehended.

While in custody, defendant made calls from jail that were recorded and monitored by detectives. In one of the calls, defendant instructed the listener where to retrieve some of the real gold jewelry he had hidden after the burglary. Police went to the location defendant discussed and recovered a red jewelry box that was hidden near the shed where defendant was apprehended. Herrera identified the jewelry box and the jewelry inside as her family's and noted that some of it was real gold jewelry.

The morning of May 27, 2017, Oscar Frierson was robbed. According to Frierson, defendant asked him for a ride and Frierson agreed to give him one in exchange for $20. Frierson knew defendant through defendant's sister and had met him about four times before, but he did not know defendant's name. He did not know where defendant wanted to go. When defendant sat down in the passenger seat, he pointed a gun towards

3.

Frierson's chest and told Frierson to hand over his money and jewelry. Defendant then pulled a chain off Frierson's neck and rings off his fingers and grabbed Frierson's cellular phone. Frierson later saw defendant in pictures on Facebook wearing his jewelry. He identified defendant as the perpetrator in a photographic lineup after the robbery and at trial. In the same jail call in which defendant discussed the location of the Herreras' jewelry box, defendant also discussed creating an alibi for May 27, 2017, and he stated the "Facebook pictures" were "the only evidence."

A jury convicted defendant of second degree robbery (§ 211; count 1) of Frierson; and first degree burglary (§ 460, subd. (a); count 2) and resisting, obstructing, or delaying an officer (§ 148, subd. (a)(1); count 3) in connection with the Herrera burglary. The jury also found true a personal use of a firearm enhancement (§ 12022.53, subd. (b)) as to count 1, and the court found true two prior serious felony convictions (§ 667, subd. (a)(1)) that also qualified as strike priors and prior prison enhancements.

The court sentenced defendant to 25 years to life imprisonment on count 1, enhanced by 10 years for the firearm enhancement and an additional 10 years for the two prior serious felony enhancements. The court sentenced defendant to 25 years to life imprisonment on count 2, enhanced by 10 years for the two prior serious felony enhancements. Finally, the court sentenced defendant to 180 days in jail with credit for time served on count 3.

## DISCUSSION

### I.     Court did not err in refusing to sever the charges

Defendant first contends the court erred in failing to sever the robbery charge from the burglary charge. We disagree.

### A.     Relevant Procedural History

Before trial, the prosecutor moved to consolidate the charges related to the Herrera burglary and the Frierson robbery. In his motion, the prosecutor argued both cases involved intent to commit theft, common elements of feloniously obtaining property, the

4.

same lead detective, and the same strikes and priors. Defense counsel was unavailable the day the motion to consolidate was heard. The court denied a request by the defense for another continuance of the motion setting, noting, "the moving papers are pretty conclusive" and "in the Court's opinion … consolidation is appropriate." Accordingly, the court consolidated the robbery case with the burglary case "without prejudice to the defense to address a request for a severance prior to trial." Defendant never moved to sever the cases.

### B. Standard of Review and Applicable Law

"Section 954, in relevant part, permits the joinder of 'two or more different offenses of the same class of crimes or offenses.' Joinder is ordinarily favored because it avoids the increased expenditures of funds and judicial resources that may result from separate trials. [Citation.] Joinder, therefore, 'is the course of action preferred by the law.' [Citation.] Nonetheless, a trial court has discretion to sever properly joined charges in the interest of justice and for good cause." (*People v. Simon* (2016) 1 Cal.5th 98, 122 (*Simon*).) "In exercising its discretion in this regard, the court weighs 'the potential prejudice of joinder against the state's strong interest in the efficiency of a joint trial.'" (*People v. Merriman* (2014) 60 Cal.4th 1, 37 (*Merriman*).)

"Our review proceeds in two steps. First, we examine whether, in light of the information available at the time, the trial court abused its discretion in denying the severance motion prior to the guilt phase. [Citation.] Where, as here, the statutory requirements for joinder are met, a defendant must make a 'clear showing of prejudice' to establish that the trial court abused its discretion in denying the motion. [Citation.] A defendant seeking severance of properly joined charged offenses must make a stronger showing of potential prejudice than would be necessary to exclude evidence of other crimes in a severed trial." (*Simon*, *supra*, 1 Cal.5th at pp. 122–123, fn. omitted.) In evaluating whether the trial court abused its discretion, we consider: "(1) whether the

evidence relating to the various charges would be cross-admissible in separate trials, (2) whether any of the charges are unusually likely to inflame the jury against the defendant, (3) whether a weak case has been joined with a strong case or with another weak case, and (4) whether one of the charges is a capital offense or the joinder of the charges converts the matter into a capital case." (*Id*. at p. 123.)

"Second, even if the trial court's ruling was proper as a matter of state law, we will reverse the judgment if the defendant shows that joinder of the charges actually resulted in ' " 'gross unfairness' " ' amounting to a denial of due process during the guilt phase." (*Simon*, *supra*, 1 Cal.5th at p. 123; accord, *People v. Avila* (2006) 38 Cal.4th 491, 575.)

### C.    Analysis

Defendant contends the trial court erred in failing to sever the two cases. We conclude defendant waived this claim and, irrespective, he was not "clearly prejudiced" by the consolidation nor did it result in "gross unfairness" in violation of defendant's due process rights.[2]

### 1.    Forfeiture

First, defendant forfeited this issue by failing to move to sever the charges below. (See *People v. Rogers* (2006) 39 Cal.4th 826, 850–851; *People v. Lind* (2014) 230 Cal.App.4th 709, 716.) Though defense counsel was not present when the court ordered consolidation, the court expressly stated the consolidation was without prejudice to defendant filing a later motion to sever the charges. It is undisputed defendant never moved to sever the charges. On this record, we reject defendant's assertion that "the superior court's actions prevented counsel from lodging a formal objection" or that it "assumed counsel was objecting but decided to rule for the prosecution anyway." To the contrary, the record establishes the court explicitly preserved defendant's ability to seek

---

[2]    Defendant further contends, if the issue was waived based on his failure to seek severance, his counsel was ineffective on that basis. Because we reject defendant's claim on the merits, we need not address his related ineffective assistance of counsel claim.

severance; however, defendant failed to pursue it. We also reject defendant's assertion the prosecutor's motion to consolidate sufficiently preserved the issue of severance for our review. Rather, defendant's " 'failure to move to sever the counts … forfeited any claim that the trial court abused its discretion in denying severance.' " (*Lind*, at p. 716, quoting *Rogers*, at p. 850.) The trial court " 'had no statutory duty to order severance on its own motion.' " (*Lind*, at p. 716, quoting *Rogers*, at p. 851.)

Nevertheless, as discussed *post*, defendant's claim fails on the merits. He has not made a "clear showing of prejudice" or established that the consolidation of the two cases resulted in "gross unfairness" in violation of his due process rights.

### 2. Consolidation of cases did not "clearly prejudice" defendant

As a threshold matter, defendant concedes the robbery and burglary charges met the statutory requirements for joinder because they are "different offenses of the same class of crimes or offenses." (§ 954.) Thus, our review turns to whether the defendant has established a clear showing of prejudice such that the trial court abused its discretion in granting the motion to consolidate. (See *Simon*, *supra*, 1 Cal.5th at pp. 122–123.) Weighing the relevant factors in evaluating the trial court's decision to consolidate the cases, we cannot conclude the trial court abused its discretion.

### a) Cross-admissibility of evidence

With regard to the first factor, defendant denies evidence of the two incidents would have been cross-admissible in separate trials. He contends the incidents happened months apart in different locations against different victims. They also "involved two different methods of taking property." The People argue at least some evidence of the robbery and burglary charges was cross-admissible, namely the jail call and the testimony of the lead detective who was the same in both cases.

" '[T]he issue of cross-admissibility "is not cross-admissibility of the charged offenses but rather the admissibility of relevant evidence" that tends to prove a disputed fact.' " (*People v. Capistrano* (2014) 59 Cal.4th 830, 849 overruled in part on other

grounds; accord, *People v. Johnson* (1988) 47 Cal.3d 576, 589.) The jail call in which defendant directed the listener to the Herreras' stolen jewelry also contained inculpating evidence of his involvement in the May 2017 Frierson robbery—namely, his discussion about creating an alibi for that date. Thus, the jail call would have been admissible in both trials had the charges been separated. Additionally, both cases shared the same lead detective whose testimony would have been cross-admissible in both trials had the two incidents been tried separately.

Irrespective, although cross-admissibility of evidence may be an independently sufficient condition justifying a trial court's denial of severance, it is not a necessary one. (*Simon*, *supra*, 1 Cal.5th at p. 123; see *Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1221.) "In the absence of cross-admissibility, we turn to the remaining factors to assess whether the trial court abused its discretion." (*Simon*, at pp. 123–124.)

### b) Inflammatory evidence and relative strength of cases

Defendant next contends evidence of the Herrera burglary was more likely to inflame the jury because, though it was not a graphic or violent crime, the victims—a working family with young children whose house had been broken into—were very sympathetic. He also contends the evidence of the burglary charge was "much stronger" than the evidence of the robbery charge. He asserts he had "little, if any, defense to the burglary charge," other than arguing he was only guilty of receiving stolen property because the prosecution did not prove he went into the house; whereas, the robbery charge was only supported by "dubious testimony of the alleged victim." He argues Frierson's testimony that he agreed to give defendant a ride to an unnamed location, an unknown distance away, while wearing expensive jewelry and carrying $900 was "ridiculous." Defendant contends "the meeting had all the markings of a drug deal, not a mere car ride. And if the drug deal did not go through as Frierson expected, he had reason to falsely accuse appellant of robbing him." We disagree with defendant's contentions and his characterization of the evidence.

8.

The "animating concern" underlying the second factor is " 'whether " 'strong evidence of a lesser but inflammatory crime might be used to bolster a weak prosecution case' on another crime." ' " (*Simon*, *supra*, 1 Cal.5th at p. 124.) "Only when a defendant has made a clear showing of potential prejudice may we find an abuse of discretion in this context." (*Id.* at p. 127.) "The core prejudice concern arising in connection with [the third factor] is that jurors may aggregate evidence and convict on weak charges that might not merit conviction in separate trials." (*Ibid.*) "But even where evidence from one incident could be considered 'inflammatory' as the term is understood in our case law [citation], we will find no abuse of discretion if the evidence of guilt for each of the joined incidents is sufficiently compelling." (*Ibid.*)

Here, neither case was more inflammatory than the other, and the evidence of both cases was strong; thus, these factors do not weigh in favor of severance. Even if we were to accept as true defendant's assertion that the victims of the Herrera burglary were more sympathetic than Frierson, we cannot conclude the burglary case evidence was particularly inflammatory. Rather, the circumstances of the robbery could be viewed as equally, if not more egregious. Frierson alleged defendant pointed a gun at him while robbing him in his car; whereas, the Herreras were not home when defendant burglarized their house. Given the circumstances, we cannot conclude one case was more likely to inflame the jury's passions than the other.

Defendant relies upon *People v. Earle* (2009) 172 Cal.App.4th 372 (*Earle*) in support of his argument that "this was the prototypical situation where a charge supported by very strong evidence[, the burglary charge,] was joined with another unrelated charge supported only by very weak evidence[, the robbery charge]." In *Earle,* the trial court joined a misdemeanor indecent exposure charge with unrelated charges of assault with intent to commit rape and assault using a deadly weapon. (*Id.* at pp. 378, 384.) The defendant did not challenge the indecent exposure charge but "vigorously contested" the assault charges arising from the unrelated incident. (*Id.* at p. 384.) The primary issue as

9.

to the assault charges was the identity of the perpetrator and the defense focused on undermining the victim's identification. (*Ibid.*) In evaluating the inflammatory effect of evidence of the indecent exposure charge, the *Earle* the court held in that specific case the evidence of indecent exposure was "particularly inflammatory" given "the heavily contested assault charges," the weaknesses in the identification of the defendant as to those charges, and in light of the prosecutor's arguments to the jury characterizing the defendant as a " 'predator' " and " 'scary guy.' " (*Id*. at p. 401.)

However, *Earle* is inapposite. Unlike in *Earle*, as discussed, neither case was "particularly inflammatory." Moreover, here, compelling evidence supported all the charges. Regarding the burglary, officers saw defendant near the Herreras' property shortly after the burglary had occurred; defendant ran from the police when he saw them; and he was ultimately found in possession of their stolen property. In the robbery case, Frierson—the victim and eyewitness—identified defendant as the perpetrator in a photographic lineup after the robbery and at trial. The prosecution also presented photographs of defendant wearing jewelry Frierson claimed to be his. Additionally, defendant himself made incriminating statements on a jail call regarding both incidents— he directed the listener where to find the stolen jewelry from the burglary and contemplated an alibi for the date of the robbery while noting the Facebook pictures were the "only evidence." Under these circumstances, we cannot conclude the burglary case was "used to bolster a weak prosecution case" because the robbery charge was also supported by strong evidence. (*Simon*, *supra*, 1 Cal.5th at p. 125.) Because neither was a weak case that needed joinder to bolster the likelihood of conviction, defendant fails to make a clear showing of potential prejudice under this factor.

### 3. Consolidation did not result in gross unfairness

Finally, defendant argues, "[t]he burglary charge was unrelated to the robbery charge and, because of the very strong evidence and very sympathetic victims as to the burglary charge, there was a likely spillover effect to the robbery charge" resulting in

10.

"gross unfairness."  But, for all the reasons discussed *ante*, defendant does not establish joinder resulted in a denial of fundamental fairness.

" ' "A pretrial ruling that was correct when made can be reversed on appeal only if joinder was so grossly unfair as to deny due process." ' "  (*People v. McKinnon* (2011) 52 Cal.4th 610, 632.)  "Gross unfairness" exists when there is a reasonable probability that joinder affected the jury's verdict.  (*Merriman*, *supra*, 60 Cal.4th at p. 49.)

Given the strength of the evidence in support of both convictions, including defendant's own inculpating statements in the jail call, evidence he possessed stolen property taken during both incidents, and the other testimony of witnesses connecting him to both crimes, we cannot conclude it is reasonably probable the joinder affected the jury's verdict.  Thus, joinder of the charges did not render the joint trial fundamentally unfair.  (*Merriman*, *supra*, 60 Cal.4th at p. 49.)

We reject defendant's first contention.

## II.    Court did not err in requiring foundation for cross-examination of robbery victim and denying request for continuance at sentencing

Defendant next asserts the court erred in prohibiting defense counsel from questioning Frierson regarding Frierson's alleged drug-dealing activity unless another witness testified to the alleged drug dealing.  We find no abuse of discretion.

### A.    Relevant Procedural History

Before trial, the prosecution moved to exclude evidence that Frierson—the robbery victim—sold marijuana to defendant's sister.  The prosecutor explained Frierson knew defendant through defendant's sister.  And a police report stated Frierson could not provide defendant's name to the police, so the police contacted defendant's sister to obtain it; defendant's sister stated she knew Frierson because he was her "weed man." The prosecutor explained she did not intend to call defendant's sister as a witness, and defendant's sister's statement in the police report was not verified through any other witness or corroborated by the victim.  The prosecutor further argued defendant's sister's

11.

statement that Frierson was her "weed man" pertained to her relationship with Frierson, not defendant's relationship with him, and it had "no bearing on the actual case as far as what was occurring when the crime occurred." Accordingly, the court found that the alleged statement by defendant's sister was "irrelevant as it does not have any tendency to prove or disprove any fact that is of consequence in the matter," "[i]t is unduly prejudicial to the witness, and cannot be verified." "Furthermore, there is no allegation, nor is there any evidence that the witness was actually in the process of selling weed to the defendant or anyone else when the [robbery] took place."

Defense counsel argued such evidence was relevant to Frierson's motive and he alleged Frierson was "kind of stalking [defendant]":

> "He's made this whole thing up. He's saying he was selling weed to her. She cut him off. She owed him some back money. He was mad because she cut him off so he fabricated it. Even regardless, of that, it's at late night, he's on the bad side of town. He was out there. And then, also he's claiming all this expen[s]ive jewelry was stolen. He hasn't said how he's working. How he pays for this. He's on the bad side of town. He's out there selling dope."

The court granted the prosecutor's motion in limine to exclude such evidence in the prosecutor's case in chief. In so holding, the court noted it did not anticipate the prosecutor would ask Frierson about his alleged drug sales to defendant's sister in the prosecution's case in chief. Accordingly, the court ruled that "[Frierson] would be subject to recall. If another witness—whether that's [defendant] or someone else—lays foundation for what [defense counsel was] saying is at issue, then [the court] would allow [defense counsel] to recall and examine that witness as to whether or not there is a basis for it, but without some kind of foundation in place for what [defense counsel was] saying the facts are, [the court was] not going to have [Frierson] being impeached by that based on the assumption that someone else later in the trial might say that that's the reason this is being made up." The court further noted, "[t]here needs to be some factual

12.

basis before [the court] … to allow a witness to be impeached with allegations of drug sales when there has been no foundation that the person engaged in it—for one—or that there is some relevancy to him engaging in it, if he did." Accordingly, "[w]hen we get to the defense case … there needs to be some foundation through some form of admissible evidence to allow that type of questioning to come in." Defendant did not raise the issue again.

### B.     Standard of Review and Applicable Law

"No evidence is admissible except relevant evidence." (Evid. Code, § 350.) " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Evidence that leads only to speculative inferences is irrelevant. (*People v. Kraft* (2000) 23 Cal.4th 978, 1035.)

" '[A defendant's] … right to cross-examination is not a matter of "absolute right." Although … "[c]ross-examination to test the credibility of a prosecuting witness in a criminal case should be given wide latitude" [citation], such latitude does not "prevent the trial court from imposing reasonable limits on defense counsel's inquiry based on concerns about harassment, confusion of the issues, or relevance .…" ' " (*People v. Pearson* (2013) 56 Cal.4th 393, 455, quoting *People v. Brown* (2003) 31 Cal.4th 518, 545.) The relevance, and thus the admissibility, of certain evidence may depend on the existence of preliminary facts. (See *People v. Brooks* (2017) 3 Cal.5th 1, 46 (*Brooks*).) The proponent of such evidence bears the burden of producing evidence in support of that preliminary fact. (*Ibid.*; Evid. Code, § 403, subd. (a).) When, like here, the evidence at issue concerns the " 'conduct of a particular person and the preliminary fact is whether that person … so conducted [himself],' the evidence is inadmissible 'unless the court

finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact.' " (*Brooks*, at pp. 46–47, quoting Evid. Code, § 403, subd. (a)(4).)

"[T]he trial court's role with regard to preliminary fact questions under Evidence Code section 403, subdivision (a) ' "is merely to determine whether there is evidence sufficient to permit a jury to decide the question." ' " (*Brooks*, *supra*, 3 Cal.5th at p. 47, quoting *People v. Lucas* (1995) 12 Cal.4th 415, 467.) The determination regarding the sufficiency of the foundational evidence is a matter left to the court's discretion. (*Brooks*, at p. 47; *Lucas*, at p. 466.) Such determinations will not be disturbed on appeal unless an abuse of discretion is shown. (*Brooks*, at p. 47; *People v. Tafoya* (2007) 42 Cal.4th 147, 165.)

A trial court's exercise of its discretion to exclude evidence does not implicate or infringe upon a defendant's federal constitutional right to confront the witnesses against him or her, unless the prohibited cross-examination might reasonably have produced a significantly different impression of the witness's credibility. (*People v. Brown*, *supra*, 31 Cal.4th at pp. 545–546.)

### C. Analysis

Defendant contends the court erred by prohibiting him from questioning Frierson regarding his alleged drug-dealing activities unless another witness testified to certain facts to establish the relevance and foundation for such testimony. He contends, "[n]o statute, rule, or case supports the novel proposition relied upon by the superior court—that before a party cross-examines a witness about particular facts, there must first be a pre-existing evidentiary foundation for those facts." Rather, he argues, "two published cases have directly rejected that proposition," *People v. Capps* (1954) 129 Cal.App.2d 429 and *Estate of Flood* (1933) 217 Cal. 763. He asserts evidence of Frierson's drug dealing was relevant to provide a plausible alternative factual scenario—that the robbery at issue was actually "a drug deal gone bad," giving Frierson "a motive to falsely accuse

14.

[defendant] of robbing him." He also argues such evidence was admissible to impeach Frierson's credibility and as a crime of moral turpitude. He contends the trial court's limitation on his counsel's cross-examination resulted in a fundamental deprivation of his right to confrontation. The People respond that the court can require a proponent of evidence to establish the existence of a "preliminary fact" before permitting the introduction of the evidence pursuant to Evidence Code section 403. They contend, here, "the proffered evidence was of Frierson's past conduct—whether he sold marijuana to [defendant's] sister—and the preliminary fact was whether Frierson had, in fact, sold marijuana to [defendant's] sister. Therefore, [defendant] was required to establish the existence of that preliminary fact by a preponderance of the evidence." We agree with the People; the court did not abuse its discretion.

The trial court was entitled to impose reasonable limits on defense counsel's cross-examination of Frierson based on concerns about the relevancy of testimony about him selling marijuana to defendant's sister. (See *People v. Pearson*, *supra*, 56 Cal.4th at p. 455; *People v. Brown*, *supra*, 31 Cal.4th at p. 545.) Here, the limited potential relevance of such evidence to the disputed issues in the case hinged upon the existence of certain preliminary facts—that Frierson in fact had sold marijuana to defendant's sister and that there was a breakdown in the relationship that gave Frierson a motive to lie about defendant robbing him. Without the establishment of these preliminary facts, exploration of Frierson's alleged drug dealing would have amounted to impeachment on a collateral matter and raised concerns of holding a trial within a trial. (See *People v. Quartermain* (1997) 16 Cal.4th 600, 625 [trial court did not abuse discretion by excluding impeachment on collateral matter]; accord, *People v. Lavergne* (1971) 4 Cal.3d 735, 744 ["A party may not cross-examine a witness upon collateral matters for the purpose of eliciting something to be contradicted"].) Because defendant failed to establish the preliminary facts necessary for showing the relevance of the prohibited

15.

cross-examination, we cannot conclude the court erred in holding evidence of Frierson's alleged drug dealing to defendant's sister was inadmissible.

Additionally, while such evidence could be relevant on the issue of Frierson's credibility, the "trial court has discretion to exclude impeachment evidence ... if it is collateral, cumulative, confusing, or misleading." (*People v. Price* (1991) 1 Cal.4th 324, 412; accord, *People v. Wheeler* (1992) 4 Cal.4th 284, 296–297, fn. omitted ["[I]mpeachment evidence other than felony convictions entail[] problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present. Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value"].) And here, the court considered the limited relevance of Frierson's alleged marijuana sales to defendant's sister and the fact the allegation of such conduct was not corroborated by any other admissible evidence in excluding it. Given the marginal probative value of the evidence, we cannot conclude the court abused its discretion in limiting cross-examination on this subject.

Defendant's cited authorities do not persuade us otherwise. (See *People v. Capps*, *supra*, 129 Cal.App.2d 429; *Estate of Flood*, *supra*, 217 Cal. 763.) While both of these cases discuss the importance of permitting latitude in cross-examination, neither case dealt with the situation at issue here—where the subject of the cross-examination was not relevant to the case without the introduction of other evidence establishing certain preliminary facts. Thus, these cases are inapposite. (Cf. *Capps*, at p. 431 [concluding court erred in prohibiting impeachment of witness on cross-examination related to her testimony at preliminary hearing, noting it was not necessary to lay a foundation by asking preliminary questions and "[t]o force counsel to inform the witness during such cross-examination of the likelihood of impeachment defeats one of the important phases of cross-examination, namely, the veracity of the witness"]; *Estate of Flood*, at pp. 784–

16.

785 [court erred in sustaining objections to proper impeachment questions on cross-examination that were relevant to disputed issues at trial].)

We also cannot conclude that if the trial court had permitted cross-examination on this subject, the questioning would have led to a significantly different impression of Frierson's credibility. Rather, given Frierson's testimony regarding the circumstances of the robbery and the other evidence, including defendant's own admissions that corroborated his account, we cannot conclude such cross-examination would have elicited testimony that would significantly affect the jury's impression of him. Accordingly, defendant's right to confrontation was not violated. (See *People v. Hayes* (1999) 21 Cal.4th 1211, 1266 & fn. 15 [disallowing impeachment of prosecution witness on collateral matter did not restrict defendant's right to confrontation and cross-examination].)

It bears worth noting the trial court did not absolutely bar defendant from cross-examining Frierson about his alleged drug dealing. To the contrary, it acknowledged that this could be a permissible area of inquiry if defendant established its relevance through other evidence; defendant failed to do so.

Accordingly, we reject defendant's second contention.

## III. Court did not err in denying request for continuance of sentencing hearing

Relatedly, defendant also asserts the court erred in refusing to continue the sentencing hearing to permit him to file a motion for new trial based on a posttrial video of Frierson allegedly selling marijuana. We find no abuse of discretion.

### A. Relevant Procedural History

Approximately three months after trial, on the day of the sentencing hearing, defense counsel noted he "received a video yesterday," from defendant's sister, "showing [Frierson] … selling weed." Defense counsel argued, "[t]he date of [Frierson] selling weed is yesterday, [several months] after the [robbery], but … it shows a pattern that

17.

[Frierson] is an actual drug dealer." Defense counsel then sought a continuance to file a motion for new trial on that basis.

The court held that was "not good cause for [a] continuance, and there [was] no motion that was filed for that or any good cause to show why the motion was not filed." Accordingly, the court denied the request for a continuance.

### B.     Standard of Review and Applicable Law

#### 1.     Continuances

A continuance may only be granted for good cause (§ 1050, subd. (e)) and trial courts have broad discretion to determine whether good cause exists (*People v. Alexander* (2010) 49 Cal.4th 846, 934). We review an order denying a motion to continue for an abuse of discretion. (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.)

The party challenging a ruling on a request for a continuance bears the burden of establishing an abuse of discretion, and an order denying a continuance is seldom successfully attacked. (*People v. Beames* (2007) 40 Cal.4th 907, 920; see *People v. Strozier* (1993) 20 Cal.App.4th 55, 60.) "Under this state law standard, discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered." (*Beames*, at p. 920.)

Section 1050, subdivision (b) provides that a party seeking to continue a hearing in a criminal proceeding must file and serve notice of the request, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, at least two court days before the scheduled hearing. (§ 1050, subd. (b).) Section 1050, subdivisions (c) and (d) provide a party may still move for a continuance without complying with the requirements of section 1050, subdivision (b) if the moving party shows good cause for the failure to comply with those requirements. (§ 1050, subds. (c), (d).) In such cases, the court must hold a hearing to determine if there is good cause for the failure to comply with section 1050, subdivision (b)'s requirements. (§ 1050, subd. (d).) "At the conclusion of the hearing, the court shall make a finding whether good cause has been

18.

shown and, if it finds that there is good cause, shall state on the record the facts proved that justify its finding…. If the moving party is unable to show good cause for the failure to give notice, the motion for continuance shall not be granted." (§ 1050, subd. (d).)

### 2. Motion for new trial

A trial court may grant a motion for new trial when the defendant discovers new evidence that is material to the defendant's case and which could not, with reasonable diligence, have been discovered and produced at trial. (§ 1181, subd. (8); *People v. Delgado* (1993) 5 Cal.4th 312, 328.) Further, to support a new trial the evidence must render a different outcome probable. (*Delgado*, at p. 328.) Thus, a trial court need not grant a new trial merely for newly discovered impeachment evidence, unless the evidence is significant enough to make a different result probable. (See *People v. Green* (1982) 130 Cal.App.3d 1, 11; *People v. Huskins* (1966) 245 Cal.App.2d 859, 862–863.)

### C. Analysis

Defendant argues the denial of his request for a continuance interfered with his "ability to present a defense, specifically his right to file a motion for a new trial based on newly discovered evidence." He contends, "the court made no inquiry as to why no written motion was filed, and thus the court was not in a position to determine whether there was good cause for failing to file a written motion." Finally, he contends, "even if there was some minimal inconvenience to granting a continuance, that interest was outweighed by the need to protect [defendant's] rights." The court did not abuse its discretion in denying defendant's request for a continuance to prepare a motion for new trial based on the alleged newly discovered video of Frierson.

Evidence supporting a motion for new trial must not only be material, but "such as to render a different result probable on a retrial" of the cause. (*People v. Delgado*, *supra*, 5 Cal.4th at p. 328.) It has long been held that "newly discovered evidence which would merely impeach or discredit a witness does not compel the granting of a new trial

19.

[citation], and a new trial will not ordinarily be granted for newly discovered evidence of that character." (*People v. Moten* (1962) 207 Cal.App.2d 692, 698; see also *People v. Green*, *supra*, 130 Cal.App.3d at p. 11 ["As a general rule, 'evidence which merely impeaches a witness is not significant enough to make a different result probable' "].)

We cannot conclude the court abused its discretion in concluding defendant's request for a continuance was not supported by good cause. Here, even assuming the "newly discovered" video of Frierson allegedly selling drugs months after the trial and the charged robbery was deemed admissible and authentic, its materiality and impact were doubtful. As previously discussed, Frierson's alleged drug dealing was collateral to the issues presented at trial. While such evidence could be probative of Frierson's credibility, the value of such evidence was diminished by the fact it was not supported by a conviction and there was no other evidence establishing its relevance to the instant case. And here, even if Frierson's credibility was affected by the introduction of such evidence, there was other corroborating evidence that inculpated defendant in the commission of the robbery including his own statements regarding creating an alibi for the day in question and his acknowledgement that the Facebook photographs were evidence against him. On the record before us, we cannot conclude a different result was probable if evidence of Frierson's alleged drug dealing had been admitted. Accordingly, the trial court was within its discretion to conclude that the inclusion of such evidence would not have been useful. And defendant has not established its failure to grant a continuance of the sentencing hearing to submit a motion for new trial "exceed[ed] the bounds of reason, all circumstances being considered." (*People v. Beames*, *supra*, 40 Cal.4th at p. 920.)

We reject defendant's contention.

## IV.    Counsel was not ineffective in arguing defendant's *Romero* motion

Defendant next contends his counsel was ineffective in failing to raise certain mitigating evidence in support of his *Romero* motion. We disagree.

20.

## A.    Relevant Procedural History

Before sentencing, defense counsel filed a motion pursuant to *Romero*, *supra*, 13 Cal.4th 497, asking the court to strike defendant's prior strike convictions. At the sentencing hearing, he argued:

> "One of the basic factors looking at the totality of the circumstances, and looking at it, I'm saying he does have a burglary from 2012. And I know it might be a stretch, but to me it is a little old. It is over six years old and he does have some mitigating issues under [California] Rules of Court, … rule 4.423(a)(3). This crime happened because of unusual circumstances that his mother had passed away. His mother was a big influence in his life. It really had some affect [*sic*] on Mr. Byrd. It made him drown himself in his already drug addiction.

> "And also, Your Honor, he has a drug addiction. We submitted an E-mail from Jericho Project saying they were going to fax me a letter. He got accepted into the program, but we haven't received the actual letter. He started using drugs around the age of 15 [years]. Your Honor, we would ask that the Court would *Romero* one of the strikes or, if not, both of the strikes. I'm not going to get into the facts of the case because the Court is very familiar with that being that you heard the jury trial." (Italics added.)

The People opposed defendant's motion and the court denied it. The trial court noted: "[G]iven the fact that both of the prior strikes are recent enough to where he is still actually on supervision for both of those offenses, and that at least one of the current charges is for the same offense that at the [*sic*] has the strikes for, the residential burglary, the Court does not believe that there is a[n] avenue for finding that he falls outside of the spirit of the [T]hree [S]trikes law."

## B.    Standard of Review—Ineffective Assistance of Counsel

"To demonstrate ineffective assistance of counsel, a defendant must show that counsel's action was, objectively considered, both deficient under prevailing professional norms and prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) To

establish prejudice, a defendant must show a reasonable probability that, but for counsel's failings, the result of the proceeding would have been more favorable to the defendant. (*Id.* at p. 694.)" (*People v. Hinton* (2006) 37 Cal.4th 839, 876.) We " ' "defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " [Citation.] "[W]e accord great deference to counsel's tactical decisions." ' " (*Ibid.*) " ' "[C]ourts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation]. "Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts." ' " (*Ibid.*)

### C. Applicable Law

" '[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders.' [Citation.] To achieve this end, 'the Three Strikes law … establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) "[T]he [T]hree [S]trikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Id.* at p. 378.)

A trial court has discretion under section 1385 to strike prior felony convictions alleged for sentence enhancement purposes. (*Romero*, *supra*, 13 Cal.4th at pp. 529–530.) In deciding whether to strike a prior felony conviction allegation, the court must

22.

"consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

### D. Analysis

Defendant argues he is serving "the functional equivalent of life in prison" because he was "a third striker" at the time of the crimes and it was incumbent upon his counsel to file a "robust *Romero* motion," but defense counsel failed to do so. He argues his counsel failed to "address the mitigated nature of [defendant's] prior strikes" in that both prior strikes were for burglaries that did not involve injuries to another person. He further contends the prior strikes must not have been aggravated given that he received probation for one prior strike, and when probation was revoked, he received the low term; and he was sentenced to the low term for the other prior strike. He further argues his counsel did not discuss his background, upbringing, youth, or the fact he could have received a very lengthy sentence even if his strike priors were struck. He contends it is reasonably probable that if his counsel had made these arguments, the sentencing court would have ruled differently on his *Romero* motion. The People respond the record contained ample evidence of the nature of defendant's prior convictions, particularly given that the same judge presided over the trial on defendant's priors and sentencing. And defense counsel "could have reasonably concluded that focusing on [defendant's] prior convictions would have done more harm than good." The People further contend, "because the trial court was already aware of the nature of [defendant's] convictions, and its mitigating value was negligible[,] it was not reasonably likely to have made a

23.

difference in the outcome of the court's decision on the motion." We agree with the People.

Here, the trial court had before it the probation report which included (1) defendant's age and birth date, (2) personal information about defendant including information about his family, education, employment, physical health (including that he denied physical or mental health issues and "never experienced any form of abuse during his childhood"), (3) his alcohol and controlled substance usage history, (4) his criminal record (including his juvenile record), and (5) a list of aggravating factors and none in mitigation. Defense counsel also filed a statement in mitigation and motion to strike defendant's prior strike convictions pursuant to section 1385 and *Romero,* arguing the court should strike defendant's prior strike convictions based on a totality of the circumstances despite his criminal history. In the motion and at the sentencing hearing, defense counsel emphasized that defendant had a drug addiction that was exacerbated by his mother's death two years before the motion was filed, and that he had been accepted into a drug treatment program. He urged the court to consider striking defendant's prior strikes and argued the strike convictions were not recent. Defense counsel further noted the court had information related to the prior strike convictions before it. And the record before us reflects that the court reviewed those records during the trial on the priors, noting both strike convictions were for prior residential burglaries in violation of sections 459 and 460, subdivision (a). One of the prior burglaries occurred in 2012 and defendant was convicted on December 18, 2012; the other occurred in 2014 and defendant was convicted on January 23, 2015. Defendant was ultimately sentenced to prison for both of those convictions.[3]

---

[3]     According to the probation report, defendant was sentenced to formal probation for the sections 459 and 460, subdivision (a) violation in 2013, but he incurred three violations and was sentenced to state prison.

24.

As the reviewing court, we must defer to counsel's reasonable tactical decisions and indulge the strong presumption that counsel's decision not to delve into the specifics of defendant's strike prior cases fell within the wide range of reasonable professional assistance. (See *People v. Hinton*, *supra*, 37 Cal.4th at p. 876.) Here, defense counsel could have reasonably decided not to emphasize the details of the priors particularly given that one of the instant offenses was for the same crime as the two strike priors, and both the instant offenses were committed while defendant was on parole for the strike offenses. Additionally, the court had information related to the strike offenses before it from the documents submitted during the trial on defendant's priors. The court also had information regarding defendant's youth and his social history before it, as detailed in the probation report. Based on this record, we cannot conclude defendant has overcome the strong presumption that defense counsel's failure to further argue the circumstances in mitigation fell outside of the range of reasonable professional assistance. (See *People v. Bonilla* (1985) 168 Cal.App.3d 201, 206 ["Trial counsel was not required to create mitigation which did not exist"].)

Moreover, a claim of ineffective assistance of counsel can be disposed of without inquiry into counsel's possible tactical reasons for his or her actions if the reviewing court can determine that even if there was attorney error, it was not prejudicial. (*People v. Kipp* (1998) 18 Cal.4th 349, 366–367; *Strickland v. Washington*, *supra*, 466 U.S. at p. 697.) Here, even assuming deficient performance by trial counsel, the record does not demonstrate a reasonable probability that but for his counsel's alleged failure to emphasize the mitigating factors, including defendant's youth and the nature of his prior strike convictions at sentencing, the result of the proceeding would have been different. As discussed, the record before us establishes the court had information regarding defendant's strike priors before it along with defendant's criminal record which included three juvenile convictions. In declining to strike defendant's prior strike convictions, the court relied on the fact defendant's prior strikes were recent, he was on supervision for

both of those offenses when the current offenses were committed, and that "at least one of the current charges is for the same offense" as his prior strike convictions—burglary. Under these circumstances, we cannot conclude it is reasonably probable the court would have rendered a different conclusion had defense counsel argued the specifics of defendant's prior strike convictions and emphasized his youth and family history further. (See *People v. Jacobs* (2013) 220 Cal.App.4th 67, 76 [counsel not ineffective for alleged failure to sufficiently argue mitigating factors at sentencing where circumstances in mitigation were reflected in probation reports and defendant did not identify any mitigating circumstances of which the court was unaware or which would have reasonably supported a lower sentence].)

Accordingly, we reject defendant's contention that he received ineffective assistance of counsel.

## V.      Remand for consideration of Senate Bills Nos. 620 and 1393

Finally, defendant contends this matter should be remanded to permit the court to exercise its newfound discretion and consider whether to strike the prior serious felony enhancements imposed pursuant to section 667, subdivision (a)(1) and the personal use of a firearm enhancement imposed pursuant to section 12022.53, subdivision (b). The People concede remand is necessary on these grounds. We agree.

Senate Bill No. 1393, signed into law on September 30, 2018, amended sections 667 and 1385 to provide the trial court with discretion to dismiss, in furtherance of justice, five-year enhancements pursuant to section 667, subdivision (a)(1). (Stats. 2018, ch. 1013, §§ 1, 2). The new law took effect on January 1, 2019. Senate Bill No. 620, signed into law on October 11, 2017, amended sections 12022.5 and 12022.53 to provide the trial court with discretion to dismiss, in furtherance of justice, firearm enhancements pursuant to sections 12022.5, subdivision (c) and 12022.53, subdivision (h) (Stats. 2017, ch. 682, §§ 1, 2). The new law took effect on January 1, 2018.

The California Supreme Court has held, when a court is unaware of the scope of its discretionary powers, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

Here, as the parties note, defendant was sentenced in this case on June 20, 2018, after Senate Bill No. 620 was passed and took effect, but before Senate Bill No. 1393 was passed and took effect. Thus, at the time of sentencing, the trial court did not have discretion to strike the prior serious felony enhancements but did have discretion to strike the 10-year firearm enhancement imposed pursuant to section 12022.53, subdivision (b). However, the record indicates the trial court was unaware of its newfound discretion under Senate Bill No. 620 to strike the firearm enhancement, believing instead that the enhancement was "mandatory." It also noted the "five-year priors" pursuant to section 667, subdivision (a)(1) were "mandatory." And nothing in the record "clearly indicates" the court would not have struck either the prior serious felony enhancements or the firearm enhancement if it was aware of its discretion to do so. Thus, we agree with defendant and accept the People's concession that remand is required on this basis.

## VI.    Amendment of Abstract of Judgment

In their response brief, the People note the abstract of judgment and sentencing hearing minute order contain multiple errors that need to be corrected. They state both the minute order and abstract of judgment incorrectly state that the trial court imposed a 20-year sentence for the robbery conviction in count 1, plus a 25 year-to-life firearm enhancement pursuant to section 12022.53, subdivision (b), when defendant was in fact sentenced to 25 years to life for the robbery conviction, plus 10 years for the section 12022.53, subdivision (b) enhancement. They also assert the abstract only reflects the imposition of the two five-year prior serious felony enhancements as to count 1, but not as to count 2.

The record before us reflects these errors have already been corrected in the October 30, 2018 first corrected minute order and amended abstract of judgment, though the amended abstract of judgment does not list defendant's second degree robbery conviction, count 1, under section 1 as required. Accordingly, on remand and following the resentencing hearing, the trial court is directed to prepare an amended abstract of judgment reflecting this change.

## DISPOSITION

We remand to the trial court for a new sentencing hearing to permit the trial court to exercise its discretion regarding whether to strike the prior serious felony enhancements imposed pursuant to Penal Code section 667, subdivision (a)(1) in light of Senate Bill No. 1393 and defendant's firearm enhancement imposed pursuant to Penal Code section 12022.53, subdivision (b) in light of Senate Bill No. 620. The trial court is also ordered to prepare an amended abstract of judgment reflecting in section 1 that defendant was convicted by a jury of count 1, second degree robbery, in violation of Penal Code section 211. The trial court is further ordered to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation. In all other respects, we affirm the judgment.

HILL, P.J.

WE CONCUR:


POOCHIGIAN, J.


DETJEN, J.

28.